**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
KEITH JOHNSON,

                            Petitioner,

           - against -

J.F. BELLNIER,

                         Respondent.
----------------------------------------------------------X

                                **REPORT &**
                                **RECOMMENDATION**

                                09-CV-00381 (KAM) (RER)

**RAMON E. REYES, JR., U. S. M. J.:**

      Keith Johnson ("Petitioner" or "Johnson") filed a pro se petition for a writ of habeas

corpus on January 23, 2009 pursuant to 28 U.S.C. § 2254.  The Honorable Kiyo A. Matsumoto

referred the matter to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

Petitioner claims that his constitutional rights were violated because his conviction was based on

legally insufficient evidence, and he received ineffective assistance of both trial and appellate

counsel.

      For the following reasons, I respectfully recommend that the petition be granted in part.

## BACKGROUND

      Calvin Chandler ("Chandler") was found shot to death early on the morning of September

23, 2002.  (Tr.[1] 109, 112-13.)  Police investigation led to Petitioner's arrest and indictment for

the shooting.  According to Petitioner's written statement and videotaped confession, the

following events transpired leading to Chandler's death:

----

[1]  Tr. refers to the trial transcript, which was annexed as part of Exhibit H in the state
court records provided by Respondent.  (Docket No. 11.)  The opening statements are contained
at the end of the "Voir Dire" transcript, also part of Exhibit H.  The rest of the trial is part of one
continuous record referred to herein.

Johnson was driving a friend's Ford when someone (he or a friend) spotted Chandler[2] driving Johnson's Lexus.  (Tr. 176, 178.)  Johnson got out of the Ford and into the Lexus; Chandler moved to the passenger seat.  (Tr. 178.)  Johnson then drove with Chandler to a friend's house in Coney Island.  (Tr. 178.)  When they arrived, one of Johnson's friends hit Chandler over the head with a gun and temporarily restrained him.  (Tr. 179.)  At some point, Chandler was released and attempted to flee; Johnson felt that if Chandler went back to his friends, Johnson's life would be in danger.  (Tr. 179.)  So, Johnson grabbed a gun, shot at, and chased Chandler down.  (Tr. 179.)  Johnson left the scene in his Lexus.  (Tr. 179.)  Soon thereafter, Chandler was found dead with six gunshot wounds, (Tr. 235), at least two of which were fatal.  (Tr. 237, 238-40.)

## A.  **Trial**

A jury trial commenced on June 3, 2003 and ended on June 18, 2003, with the Honorable Carolyn E. Demarest presiding.  At trial, the prosecution offered both Johnson's written and videotaped confessions relaying the story described above.  (Tr. 177-79 (Detective Taylor read Johnson's statement into the record); Tr. 259-60 (ADA Barry authenticated the tape, which was played for the jury).)  The prosecution also put on medical testimony that corroborated, at least in part, the version of events contained in Johnson's confessions.  (*See* Tr. 236.)  The defense put on an eyewitness who claimed that she saw a third party, "Base," and not Johnson, fire the lethal shots at Chandler that night.  (*See* Tr. 405-07; 561.)

---

[2]  In Johnson's written confession, Chandler is referred to by his nickname—"Milk." (*See* Tr. 178-79, 229.)

A jury charge conference was held on June 12, 2003, where the prosecution requested the jury be instructed on two counts of murder in the second degree—intentional and depraved indifference. (Tr. 515-16.) The Court refused, stating that the only evidence of murder indicated intentional, not depraved, actions, and the Court would instead instruct the jury on intentional murder as well as the lesser included offenses of manslaughter in the first and second degrees. (Tr. 516-17.) On the record, Stutman indicated that he supported the Court's position and would stand by it. (Tr. 516). Some off-the-record discussion must have taken place after the charge conference, however, because on June 16, Justice Demarest indicated that she would submit the depraved indifference alternative theory to the jury as discussed. (Tr. 522.) No explanation was given, nor was any objection made on the record regarding the change in the proposed jury charge.

Justice Demarest submitted to the jury counts of intentional and depraved indifference murder in the second degree, as well as manslaughter in the first and second degree, and criminal possession of a weapon in the third degree. (Tr. 615-626.) The jury was instructed to start with the charge of intentional murder in the second degree and work its way down; if a guilty verdict was reached on a count, the jury was instructed to go no further. (Tr. 625.) With respect to the depraved indifference murder count, the jury was instructed that they had to find the following three elements beyond a reasonable doubt:

> 1. That on September 23, 2002, in Kings County, Keith Johnson caused the death of Calvin Chandler.
>
> 2. That he did so by recklessly firing shots which created a grave risk of death to Calvin Chandler.

3. And that the defendant engaged in such conduct under the circumstances evincing a depraved indifference to human life.

(Tr. 648.)  Depraved indifference was defined to the jury as requiring them to find that "the circumstances surrounding the reckless conduct when objectively viewed make it so uncaring, so callous and dangerous, so inhuman as to demonstrate an attitude and utter disregard for the life of the person or persons endangered."  (Tr. 647-48.)

On June 18, 2003, the jury acquitted Johnson of intentional murder in the second degree, but rendered a guilty verdict for depraved indifference murder in the second degree.  (Tr. 692.)[3] Defense counsel, Alan Stutman ("Stutman"), did not make any motions regarding the jury verdict at the time.  (Tr. 695-96.)[4]


**B. Sentencing**

Sentencing took place on July 9, 2003 before the trial judge.  Before Johnson was sentenced, Stutman explained to the Court that he did not make the correct motion at the end of the case and asked the Court to "not allow the verdict of guilty to stand, and direct a verdict of

---

[3] New York's depraved indifference murder statute provides that a defendant is guilty of second degree murder if, "under the circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."  N.Y. PENAL LAW § 125.25(2).  "A person acts recklessly with respect to a result or circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists."  N.Y. PENAL LAW § 15.05(3).  New York law requires that "[t]he risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."  *Id.*

[4] The judge asked whether defense counsel had any motions to reserve, and defense counsel responded yes; however, no motions were actually made or renewed on the record at the time.  (Tr. 695-96.)

4

not guilty, in that there [was] no reasonable view of the evidence by which a verdict of guilty could be reached."  (Sent. Tr.[5] 2-3.)  Justice Demarest denied the request treating it as a motion to dismiss, or in the alternative a motion pursuant to New York Criminal Procedure Law (N.Y.C.P.L.) § 330.[6]  (Sent. Tr. 3.)  Justice Demarest stated that "the evidence presented to the jury would sustain the verdict and was sufficient."  (Sent. Tr. 3.)

The sentencing proceeded from there.  Arguing against any leniency, the prosecution noted that the jury heard testimony by the defense's own witness that whoever shot the victim was "standing over [him] shooting him into his back as he was lying on the ground a number of times."  (Sent. Tr. 6.)  The prosecution argued, "What is abundantly clear, Judge, is that [Johnson] didn't want Calvin Chandler to ever get up from the ground again."  (Sent. Tr. 6.)  In handing down the maximum sentence, Justice Demarest stated that "this was, essentially, a cold-blooded killing."  (Sent. Tr. 10.)  Accordingly, Johnson was sentenced to twenty-five years to life.  (Sent. Tr. 10.)

## C.  **Direct Appeal**

On direct appeal, Johnson was represented by Alexis Ascher ("Ascher").  In her brief, Ascher argued that the prosecution failed to present legally sufficient evidence of depraved

---

[5] "Sent. Tr." refers to the "Sentence" transcript, which was also annexed as part of Exhibit H of the state court records provided by Respondent.

[6] Upon a defendant's motion, N.Y.C.P.L. § 330.30 permits the court to set aside or modify a jury verdict between verdict and sentencing if there is "[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court."

indifference murder and that the verdict was against the weight of the evidence. (Exh. A.)[7] Acknowledging that the issue was not properly preserved for review, Ascher argued that the Court should reach the issue in the interest of justice. (Exh. A, at 27.) Ascher added that if the Court declined to hear the legal sufficiency issue, it should reverse the conviction for ineffectiveness of counsel for failure to move to dismiss the depraved indifference count. (Exh. A, at 28.) She offered no argument to support the position. In opposition, the People argued that legal sufficiency was not preserved for appeal and should not be reached in the interest of justice because the facts adduced at trial supported a finding of depraved indifference murder. (Exh. B.)

On October 11, 2005, the New York Appellate Division, Second Department affirmed Johnson's conviction finding that the issue of legal insufficiency was not preserved for appellate review and declining to reach the issue in the interest of justice. *People v. Johnson*, 22 A.D.3d 601 (2d Dep't 2005). The Appellate Division summarily concluded that Johnson's remaining contentions were without merit. *Id.* Without opinion, the New York Court of Appeals denied Johnson's application for leave to appeal on February 28, 2006, *see People v. Johnson*, 6 N.Y.3d 814 (2006), making Johnson's conviction final on May 29, 2006, *see Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001) (limitations period for state prisoners begins upon denial of certiorari or the expiration of their time to seek certiorari).

---

[7] Exhibits referenced herein are those exhibits submitted by Respondents as part of the state court records. (Docket No. 11.)

### D.  Collateral Post-Conviction Proceedings

On January 19, 2007, Johnson filed a writ of *coram nobis* with the Appellate Division to vacate his conviction on the ground of ineffective assistance of appellate counsel.  (Exh. C.)  The Appellate Division denied the writ on April 10, 2007, finding that Johnson failed to establish his claim.  *People v. Johnson*, 39 A.D.3d 670 (2d Dep't 2007).  On May 10, 2007, Johnson filed for leave to appeal, (Second Affirmation of Keith Johnson, dated July 21, 2009, at 2), which the Court of Appeals denied on August 13, 2007.  *People v. Johnson*, 9 N.Y.3d 877 (2007).

On September 4, 2007, Johnson initiated a second collateral proceeding, making a N.Y.C.P.L. § 440.10 motion to vacate his conviction on the ground of ineffective assistance of counsel.  (Exh. E.)  Johnson alleged ineffective assistance of trial counsel on three grounds: (1) failure to move to dismiss on legal insufficiency grounds, (2) failure to object to jury instructions that included both depraved indifference and intentional murder, and (3) failure to move pursuant to N.Y.C.P.L. § 730 for a competency hearing.[8]  (Exh. G, at 2.)

Justice Demarest denied Johnson's motion on August 28, 2008, explaining that based on the law in effect during Johnson's trial,[9] "counsel acted in accordance with acceptable legal strategy."  (Exh. G, at 4.)  She found that at the time of Johnson's trial, the standard enunciated in

---

[8] N.Y.C.P.L. § 730.30 requires a criminal court to "issue an order of examination when it is of the opinion that the defendant may be an incapacitated person."

[9] The decision incorrectly identifies the trial as taking place in 2002, but all trial transcripts are dated June 2003.  Presumably, this was merely a typographical error as the relevant cases from the time period are referenced and discussed in the context of Johnson's conviction.

*People v. Register*[10] applied to depraved indifference murder, and as such the evidence adduced at trial supported the jury's verdict of depraved indifference. (Exh. G, at 5-6.) Given that standard, she reasoned that no prejudice flowed from defense counsel's failure to object to the dual charge and preserve the issue of legal sufficiency for review, nor was defense counsel's decision not to object unreasonable. (Exh. G, at 7.) Justice Demarest dismissed the third ground of the motion pursuant to N.Y.C.P.L. §§ 440.10(3)(a) and 440.30(4)(b), explaining that the N.Y.C.P.L. § 730 issue was not properly adduced on the record to provide an adequate basis for review and Johnson also failed to substantiate the claim with any supporting evidence. (Exh. G, at 7-8.)

Johnson filed an application for leave to appeal in September 2008, but due to a defect in his papers was required to re-file on November 18, 2008. (First Affirmation of Keith Johnson ("First Johnson Aff."), dated May 20, 2009, at 2, 5.) The Appellate Division denied the application on January 13, 2009. (First Johnson Aff., at 2.)[11]

---

[10] In *People v. Register*, 60 N.Y.2d 270 (1983), the Court of Appeals interpreted the depraved indifference statute as requiring the jury to focus "not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct." *Id.* at 276 (internal citations omitted). From that point on juries were increasingly instructed on both intentional and depraved indifference murder. *See, e.g.*, *People v. Sanchez*, 98 N.Y.2d 373, 377-378 (2002) (finding it reasonable for a jury to conclude that a one-on-one point blank shooting was reckless, rather than intentional). This line of cases has since been expressly overruled by *People v. Feingold*, 7 N.Y.3d 288 (2006), but before *Feingold*, the Court of Appeals stated that "[t]he use of a weapon can never result in depraved indifference murder when . . . there is a manifest intent to kill." *People v. Payne*, 3 N.Y.3d 266, 271 (2004). Now, it is the rule in New York that "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder." *Id.* at 272.

[11] A copy of the decision and order denying his application is annexed to the petition as the final page of the submission.

## E.  Habeas Petition

On January 23, 2009, Johnson filed this petition pro se.  (Docket Entry No. 1.)  Judge Matsumoto ordered Johnson to supplement his petition to specify the dates of filing for his state post-conviction collateral proceedings, which were necessary to determine the timeliness of the petition.  (Docket Nos. 4 and 7.)  Johnson complied with Judge Matsumoto's orders, and Respondent was ordered to respond to the petition.  On April 22, 2010, Judge Matsumoto referred the matter to me for a Report and Recommendation.  (Docket No. 15.)

Petitioner asserts four grounds for relief: (1) legally insufficient evidence to sustain a conviction for depraved indifference murder, (2) ineffective assistance of trial counsel for failure to preserve the legal sufficiency issue for appellate review by not objecting to the depraved indifference count in the jury charge and/or not making a motion to dismiss the verdict on those grounds, (3) ineffective assistance of trial counsel based on N.Y.C.P.L. § 730 (competency hearing) and (4) ineffective assistance of appellate counsel.

Respondent argues that Petitioner's legal insufficiency claim is either procedurally barred or meritless.  (*See* Respondent's Memorandum of Law ("Resp. Mem."), dated Sept. 23, 2009, at 2-9.)  Respondent further asserts and argues that Petitioner's claims for ineffective assistance of counsel (grounds 2 and 4) are meritless.  (*See generally* Resp. Mem.)  Respondent has not substantially addressed Petitioner's claim for ineffective assistance of counsel for failure to move for a competency hearing.

In reply, Petitioner[12] argues that the legal insufficiency issue is not barred because the contemporaneous objection rule in New York is neither an independent nor adequate basis for the Appellate Division's decision, or in the alternative, the procedural default should be excused. (Reply Affirmation in Further Support of Petitioner's Petition for a Writ of Habeas Corpus, ("Reply Mem."), dated Nov. 30, 2009, ¶¶ 20-26.)  Petitioner asserts that on the merits of the legal sufficiency claim, the facts adduced at trial were legally insufficient to support a conviction for depraved indifference murder.   (Reply Mem. ¶¶ 2-10, 27.)  Petitioner also reasserts that it was ineffective assistance of trial counsel to not preserve the issue for review, and that it was ineffective assistance of appellate counsel to not raise an ineffective assistance of trial counsel claim on appeal.  (Reply Mem. ¶¶ 11-19, 28-30.)  He did not mention the claim of ineffective assistance of counsel for failure to move for a N.Y.C.P.L. § 730 hearing.

## DISCUSSION

### A.  Procedural Bar

Before a federal court may review the merits of a habeas petition, the court must first (1) ensure that the petition is timely made, *see* 28 U.S.C. § 2244(d)(1), (2) that the issues raised in the petition were exhausted, *Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994), and (3) that they were not decided on independent and adequate state law grounds, *Lee v. Kemna*, 534 U.S. 362, 375 (2002).  For the reasons discussed below, I respectfully recommend that Petitioner's

---

[12] Between filing his initial petition and his reply, Johnson retained counsel, who prepared and filed Petitioner's Reply.

claim for ineffective assistance of trial counsel based on N.Y.C.P.L. § 730 be dismissed as procedurally barred, but that the Court reach the merits on all other claims.

### 1. *Timeliness of Johnson's Petition*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") assigns a 1-year limitations period to file a writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The period generally runs from the date conviction becomes final (except in specific circumstances, which do not apply in the instant case).  28 U.S.C. § 2244(d)(1)(A).  This period is tolled during the pendency of "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment."  28 U.S.C. § 2244(d)(2).  As Judge Matsumoto noted in her first Memorandum and Order with respect to this petition, Petitioner's conviction became final on May 29, 2006.  (Docket No. 4.)  However, Petitioner had two pending State post-conviction collateral review proceedings wending through the state system between the final date of conviction and the filing of this petition.  While those applications were pending, the statute of limitations was tolled.  Excluding the tolled periods from the calculation, only 270 days[13] passed from the time Petitioner's conviction became final to the filing of this petition.  As such, the petition was timely made.

### 2. *Exhaustion of Johnson's Claims*

The exhaustion requirement applies to every federal habeas claim alleged in the petition.  *See Caballero*, 42 F.3d at 740.  A habeas petitioner must first present his constitutional claims to

---

[13]  Although the petition was docketed on January 23, 2009, Petitioner gets the benefit of the "prison mailbox" rule, and as such, the date he swears the petition was placed in the prison mailing system is the date of filing for calculating the limitations period, which in this case was January 21.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

the state courts. *See* 28 U.S.C. 2254(b)(1)(A). A petitioner is deemed to have exhausted state judicial remedies when the issue has been fairly presented in the state courts or the petitioner has otherwise given the state courts a fair opportunity to redress the federal claim. *See Duncan v. Henry*, 513 U.S. 364, 366-67 (1995) (per curiam). Although the Court may raise the issue of exhaustion sua sponte, I will not undertake a lengthy review of exhaustion since the Respondents have not raised the issue. However, I will note that each of the four issues raised by Petitioner has been fully adjudicated and appealed through the state courts. On direct appeal, Petitioner exhausted his legal sufficiency claim (ground 1).[14] By separate collateral proceedings, Petitioner also exhausted his ineffective assistance of appellate counsel claim via an application for a writ of *coram nobis* (ground 4), for which Petitioner requested and was denied leave to appeal, and all of his ineffective assistance of trial counsel claims via a § 440 motion to vacate judgment, for which Petitioner requested and was denied leave to appeal (grounds 2 and 3).

### 3. *Independent and Adequate State Grounds for Denial of Johnson's Claims*

Federal courts are generally precluded from habeas review if it is clear that the underlying state court decision(s) rested on state procedural law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Jiminez v. Walker*, 458 F.3d 130, 137-38 (2d Cir. 2006). The state law must not only be an independent procedural bar under state law, but also "adequate to support the judgment." *Coleman*, 501 U.S. at 729. Here, Respondent only argues that the legal sufficiency claim is procedurally barred. However, Petitioner's claim for ineffective assistance of counsel based on

---

[14] Arguably, Petitioner raised his ineffective assistance of counsel arguments for failure to preserve the legal sufficiency issue on direct appeal. However, since the § 440 motion decision addressed the merits, rather than dismissing for failure to raise the issue on direct appeal, I will deem the issue exhausted by the unsuccessful § 440 motion to vacate judgment.

N.Y.C.P.L. § 730 was clearly denied based on state procedural law and thus, should not be subject to review by a federal court. *See Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir. 1999) ("Applying the doctrine [of independent and adequate state grounds] in the habeas context prevents a federal district court from being able to do in habeas cases what the Supreme Court could not do on direct review. . . .[it] deprives 'state prisoners whose custody was supported by independent and adequate state grounds [of] an end run around the limits of [the Supreme] Court's jurisdiction . . . .'") (quoting *Coleman*, 501 U.S. at 730-31).

### a. *Procedural Default on N.Y.C.P.L. § 730 Claim*

Petitioner's third ground for review is procedurally barred because the claim was denied on independent and adequate state law grounds. Specifically, Petitioner's claim for ineffective assistance of trial counsel based on N.Y.C.P.L. § 730 was denied pursuant to two procedural laws. Pursuant to N.Y.C.P.L. § 440.10(3)(a), the State Court found that Petitioner failed to adduce any facts on the record that would serve as an adequate basis for review, despite his ability to do so before sentencing or on appeal. (Exh. G, at 7-8.) Pursuant to N.Y.C.P.L. § 440.30(4)(b), the State Court also rested its decision to deny Petitioner's motion on the basis of his failure to substantiate his claims with supporting evidence and sworn affidavits. (Exh. G, at 8.) Either of these grounds alone would be sufficient to bar review since they are New York procedural laws, which are adequate bases to support the Court's decision to deny Petitioner's motion. Therefore, I respectfully recommend that Petitioner's claim of ineffective assistance of counsel based on N.Y.C.P.L. § 730 be deemed procedurally barred.

### b. *Failure to Preserve the Legal Sufficiency Claim for Appellate Review*

Petitioner argues in his reply[15] that the refusal to review the unpreserved legal insufficiency claim was (1) not based on an independent state law because the procedural law is "intertwined or connected with federal law," (Reply Mem. ¶ 23), and (2) not an adequate ground of support because of the rule's inconsistent application. (Reply Mem. ¶¶ 25-26.) Petitioner also argues that even if it was an independent and adequate state ground for dismissal, the procedural default should be excused for cause and prejudice. (Reply Mem. ¶¶ 21-22.) I will address each of these arguments in turn, but I respectfully recommend that the legal sufficiency claim be reviewed on the merits.

### i. Independent and Adequate Grounds

It has long been recognized that New York's contemporaneous objection rule may serve as an independent and adequate state ground barring federal habeas review. *See, e.g.*, *Garcia*, 188 F.3d at 79. Despite this long-standing principle, Petitioner suggests that because New York courts have made exceptions to the rule, and have reviewed unpreserved issues concerning a person's constitutional rights (*i.e.* the "plain error rule"), such exceptions entangle state procedural law with federal law.[16] (Reply Mem. ¶¶ 23-24.) Indeed, New York appellate courts

---

[15] Johnson did not address the issue of procedural default or excuse for procedural default in his initial pro se petition. These arguments were only raised by petitioner's newly retained counsel in reply to Respondent's opposition. Pro se petitions are to be construed liberally. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Although technically a party may not make an argument on reply that was not raised in his initial pleadings, having construed the initial pro se petition liberally as I must, I will treat these arguments as having been raised in the pro se petition.

[16] Petitioner's reliance on *Ake v. Oklahoma*, 470 U.S. 68 (1985), is misplaced because the procedural rule at issue in *Ake* did not apply to fundamental trial error, which included errors in federal constitutional law. *Id.* at 74-75. Therefore, application of the Oklahoma procedural law

14

have the discretion to review unpreserved issues in the interest of justice, N.Y.C.P.L. §

470.15(3)(c), (6)(a), but this is a discretionary power independent of federal law. New York does

not mandate that its courts review unpreserved constitutional issues as a rule. Since the rule is

wholly procedural and separate from federal law, it is an independent state law ground for the

appellate court's decision. *See Brown v. Ercole,* 353 Fed. Appx. 518, 520 (2d Cir. 2009);

*Garcia*, 188 F.3d at 79.

 Additionally, "New York's contemporaneous objection rule is not rendered 'inadequate'

on account of novelty or sporadic application" since it has been consistently applied. *Garcia*,

188 F.3d at 79. Petitioner's claim that the rule is inconsistently applied is unfounded and belied

by numerous cases in the Appellate Division that have presented the same issue as Petitioner's

case and been denied on precisely the same grounds. *E.g.*, *People v. Lampon*, 38 A.D.3d 682,

683 (2d Dep't 2007); *People v. Fore*, 33 A.D.3d 932, 933 (2d Dep't 2006); *People v. Guitierrez*,

15 A.D.3d 502, 503 (2d Dep't 2005). It is clear that the Appellate Division has been consistently

applying the same standard to cases like Petitioner's, both before and after his appeal.

 Moreover, Petitioner's counsel's attempt at sentencing to preserve the issue of legal

sufficiency for appeal was not sufficiently specific to meet the requirements of the rule under

New York case law. New York courts have long-required that objections be addressed to the

specific deficiency in the evidence to preserve an issue for appeal, thus giving the trial judge the

opportunity to evaluate the legal merits. *People v. Hawkins*, 11 N.Y.3d 484, 492 (2008); *People

v. Gray*, 86 N.Y.2d 10, 20-21 (1995). Johnson's counsel's objection "that there [was] no

reasonable view of the evidence by which a verdict of guilty could be reached" was too general

_____

depended upon a federal ruling, rather than it being an issue for discretionary review. *Id.*

to preserve the issue of legal insufficiency. *See, e.g.*, *Hawkins*, 11 N.Y.3d at 493 (finding that defense counsel's objection that the People "failed to prove that [defendant] acted with Depraved Indifference Murder" was not sufficiently specific to preserve the issue of legal sufficiency for appeal).

As such, the Appellate Division's decision to affirm Petitioner's conviction rested on independent and adequate state procedural grounds.

### ii. Excuse for Procedural Default

In the event of procedural default, however, a federal court may continue to the merits of a habeas petition if the petitioner can show cause for the default and resulting prejudice, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or if the petitioner can show that a miscarriage of justice would occur if the merits are not reached, *Harris v. Reed*, 489 U.S. 255, 262 (1985). Here, Johnson cannot establish cause for his default. He can, however, establish that a fundamental miscarriage of justice would result were the Court not to reach the merits of his case.

### a) Cause and Prejudice

"[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986). Rather, "cause" must be some "objective factor external to the defense" which prevented counsel from complying with the state procedural rules. *Id.* at 488. Objective factors include "interference by outside officials or the unavailability of a defense due to its constitutional novelty." *Fernandez v. Smith*, 558 F. Supp. 2d 480, 490 (S.D.N.Y. 2008) (Chin, DJ). A petitioner establishes "prejudice" by proving that he suffered

"actual" injury and that he was put at a "'substantial disadvantage, infecting the entire trial with error[s] of constitutional dimensions.'" *Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Specifically, Petitioner argues that he can establish cause by way of the ineffectiveness of trial counsel in failing to preserve the issue. If counsel's failures rise to the level of a successful constitutional ineffective assistance of counsel claim, then counsel's errors may be the basis for "cause" so long as the petitioner has exhausted the issue. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Here, Johnson's argument is unavailing because although he has exhausted the issue, for reasons explained in Section B.3, Johnson cannot meet his burden of proving ineffective assistance of counsel. Therefore, Johnson cannot establish cause for his default on the basis of ineffective assistance of counsel.

Recently, another judge in this district confronted the same failure to preserve issue presented by Johnson and excused his procedural default on grounds other than ineffective assistance of counsel. In *Petronio v. Walsh*, the petitioner was convicted of depraved indifference murder after he slammed a man's head "against the floor three times and kicked him in the head twice" during the course of a fight over drugs. No. 09-CV-341 (ADS), 2010 WL 3564269, at *1 (E.D.N.Y. Sept. 14, 2010). Petronio's counsel failed to make an objection to the legal sufficiency of his depraved indifference conviction, but the issue was raised on appeal. *Id.* at *3-4. Like Johnson's case, the Appellate Division denied Petronio's appeal because the issue was unpreserved, citing the contemporaneous objection rule. *Id.* at *4. The Appellate Division also went on to say that it would have denied Petronio's sufficiency claim on the merits in any event since the weight of the evidence supported the verdict. *Id.* Upon granting Petronio's writ

of habeas corpus, the District Court found that the novelty of the legal sufficiency argument provided cause for the procedural default. *Id.* at *13-14. As such, the Court excused the petitioner's procedural default because the "argument could not reasonably have been within counsel's contemplation at the time of his trial in April of 2002." *Id.* at *13.

Similarly, a District Court in the Southern District of New York facing this precise question excused a petitioner's procedural default on the same basis. In *Fernandez v. Smith*, the petitioner was convicted of depraved indifference murder after following a man in his car and striking him in the head with a flashlight four or five times, which led to the man's death. 558 F. Supp. 2d at 483. Fernandez's counsel moved for a directed verdict on the grounds that the evidence was insufficient to support depraved indifference murder under N.Y. Penal Law § 125.25. *Id.* at 486-87. Despite the trial court's decision to entertain (and deny) the motion on the merits, the Appellate Division found it to be unpreserved for review, again citing the contemporaneous objection rule. *Id.* at 488. As in *Petronio*, the Appellate Division also went on to say that were the issue preserved it would be denied on the merits. *Id.* Upon granting Fernandez's petition, the District Court cited the "evolvement of the law" as an external factor responsible for counsel's failure to properly preserve the issue for appeal at his Fall 2003 trial. *Id.* at 494. The Court excused Fernandez's procedural default finding that due to the evolving state of the law, Fernandez could have made no more specific objection to comport with the contemporaneous objection rule. *Id.* at 493-94.

Despite both of these rulings, Johnson's case falls short of the circumstances necessary to show cause. Johnson's trial took place in the Summer of 2003. By that point, the law, though still unsettled, was beginning to evolve. *See, e.g.*, *People v. Hafeez*, 100 N.Y.2d 253 (2003)

18

(one-on-one premeditated stabbing could not support depraved indifference murder conviction). Unlike Petronio whose trial took place more than a year earlier, the argument was no longer so novel that it could not reasonably have been within the contemplation of Johnson's counsel.[17] However, unlike Fernandez's counsel, who raised a very specific objection referencing legally insufficient evidence to support a depraved indifference murder conviction, Johnson's counsel made only a vague objection to the jury verdict. Johnson's counsel here could have been expected to be at least as specific as Fernandez's attorney despite the evolving state of the law.[18]

I note, however, that were novelty of the argument sufficient cause in this case, Johnson would be able to establish prejudice given the sentence he received for murder in the second degree (25 years to life imprisonment) and the lesser sentences available for manslaughter in the first degree (maximum sentence of 25 years) or manslaughter in the second degree (maximum sentence of 15 years), on which the jury was also instructed. N.Y. PENAL LAW § 125.20(1) (designating manslaughter in the first degree a class B felony); N.Y. PENAL LAW § 125.15(1) (designating manslaughter in the second degree a class C felony).

_____

[17] This is not to say that it would have been ineffective assistance of counsel not to raise the issue at the time. As explained in greater detail in Section B.3, the law was just beginning to change so that it could reasonably have been within the contemplation of counsel, but the law was not so changed yet that it would have been unreasonable not to raise it.

[18] Moreover, to the extent that an argument could be made that Johnson would not have benefitted by any more specific argument because of the evolving state of the law, I recognize that such a "futility" argument has been explicitly rejected by the Second Circuit in the depraved indifference context as "cause" for procedural default. *Brown*, 353 Fed. Appx. at 520; *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006); *see also Gutierrez v. Smith*, No. 06-CV-4939 (SJF), 2010 WL 3855225, at *7-8 (E.D.N.Y. Sept. 27, 2010).

### b) <u>Fundamental Miscarriage of Justice</u>

Even though Johnson cannot establish cause to excuse his procedural default, a fundamental miscarriage of justice would result if his case is not reached on the merits.[19]  Upon a showing of "actual innocence", the Court may excuse a petitioner's procedural default and reach the merits of the claim.  *Carrier*, 477 U.S. at 495-96.  "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. U.S.*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)).

Recognizing that the fundamental miscarriage exception should rarely be invoked, Johnson's case presents the rare circumstance where the law upon which his conviction rests underwent a significant doctrinal change after his trial, but before his conviction became final. As discussed in more detail below, Johnson should have had the benefit of the substantial changes in law that went into effect prior to his final conviction.  Admittedly, Johnson's position is a disturbing one—that intent to harm negates his conviction.  However, this is not a position that is foreign to the depraved indifference cases as they were evolving while Johnson's direct appeal was pending.  In fact, the key cases that changed the New York law on depraved

---

[19] Although this argument is not specifically made by Johnson in his pro se petition or counseled reply, the basis of his claim is that as a matter of law of he could not have been guilty of depraved indifference murder because the evidence at trial supported only intentional acts. His arguments show a colorable claim of "actual innocence" and so the Court should address the issue in the interest of justice.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("[T]he individual interest in avoiding injustice is most compelling in the context of actual innocence."); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d at 474 (pleading by pro se litigant must be construed liberally); *Moorish Science Temple of Am., Inc. v. Smith*, 693 F.2d 987, 989 (2d Cir. 1982) (if pro se litigant pleads facts that would entitle him to relief, petition should not be dismissed because he did not correctly identify statute or rule of law that provides relief he seeks).

indifference murder present facts similar to Johnson's, wherein the defendants' actions evinced "manifest intent" to harm rather than "depraved indifference," and as a result, had their convictions for depraved indifference murder reversed.  *See People v. Suarez*, 6 N.Y.3d 202 (2005); *People v. Gonzalez*, 1 N.Y.3d 464 (2004); *People v. Payne*, 3 N.Y.3d 266 (2004).

In both *Petronio* and *Fernandez*, the District Courts found that even in the absence of cause, a change in the law could support an actual innocence claim sufficient to excuse a procedural default.  2010 WL 3564269, at *8*;* 558 F. Supp. 2d at 498-501.  However, in another recent Eastern District decision, *Gutierrez v. Smith*, the Court reached the opposite conclusion.  2010 WL 3855225 at *9-10.  Relying on the Supreme Court's decision in *Schlup*, and finding certain language in *Bousley* to be "mere dictum," the *Gutierrez* Court held that an actual innocence claim can only be based on new evidence, and not on an intervening change in state substantive law.  *Id.* (citing *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004)).  I respectfully disagree for two reasons, and concur with the Courts in *Petronio* and *Fernandez*.

First, although in *Doe v. Menefee* the Second Circuit recognized as dicta the Supreme Court's suggestion in *Bousley* that the "petitioner's habeas claim *might* survive on remand if he could establish a claim of actual innocence," 391 F.3d at 162 n. 17 (emphasis added), that does not lessen in any way *Bousley's* essential *holding*.[20]  As the Court in *Petronio* correctly noted, in *Bousley* the Supreme Court reversed the denial of a writ of habeas corpus where the defendant

_____

[20]  What appears to have motivated the Court's reference to this language in *Bousley* as being "dicta" was the dispute with the dissent over whether on remand the government is limited to the existing record to rebut any actual innocence showing, or whether it should be permitted to present any evidence of petitioner's guilt even if that evidence was not presented previously. 391 F.3d at 162 n.17 (citing *Bousley*, 523 U.S. at 624).  That dispute, however, is immaterial to this petition.  It seems clear that *Bousley* permits an actual innocence claim to be predicated on a change in the law.

sought to excuse his procedurally-defaulted claim by arguing actual innocence due to a change in federal law that went into effect prior to his conviction becoming final. While it is true that the Supreme Court did not decide whether or not the petitioner had established his actual innocence based on the facts as applied to the changed law, it is equally true that the Supreme Court decided that he should be given a chance to do so. Petitioner's actual innocence claim in *Bousley* was predicated entirely on the intervening change in federal law during the pendency of his appeal, he did not cite to any new evidence. If the Supreme Court were of the opinion that a change in the law could not support an actual innocence claim, there would have been no need to reverse and remand. Thus, *Bousley* stands for the proposition that where, as here, there is a change in the law before a conviction becomes final, a habeas petitioner should be entitled to avail himself of that change in the law.[21] There is no meaningful difference between the essential holding in *Bousley* and the case at bar. Simply put, there is nothing in *Schlup*, *Bousley* or *Doe* that prohibits a habeas petitioner's claim of actual innocence from being predicated on an intervening change in substantive law before a petitioner's conviction becomes final.

Second, to the extent the Court in *Gutierrez* relied on *Henry v. Ricks*, 578 F.3d 134 (2d Cir. 2009), that is of no moment. While it is true that in *Henry* the Second Circuit held that the changes in New York depraved indifference law were not to be applied retroactively on collateral review, *id.* at 138-39, that case was in a very different procedural posture than is Johnson's. By

---

[21] Such a holding is consistent with well-established Supreme Court precedent concerning the retroactivity of changes in criminal law. *See, e.g., Bunkley v. Florida* , 538 U.S. 835 (2003) (case remanded to state court where it was unclear whether law had changed prior to defendant's conviction becoming final); *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) (petitioner whose claim is pending on direct review entitled to benefit from any substantial change in law upon which he was convicted).

the time the changes in the law came about in *Henry*, his conviction was already final. *Id.* at 136 (noting that Henry's direct appeal was denied by the state courts in 2000 before any change to the depraved indifference law). Here, Johnson's conviction was not final before the law changed. As discussed, *infra* B.2.a, a petitioner whose claim is still pending on direct review is entitled to benefit from any substantial change in the law upon which he was convicted. *See Griffith*, 479 U.S. at 323 (quoting *United States v. Johnson*, 457 U.S. 537, 556 n. 16 (1982)).

As explained in more detail below, *infra* section B.2, given the changes in the law, the facts adduced at his trial "did not constitute depraved indifference murder as a matter of law, and it would be manifestly unjust for him to serve a sentence for a crime that he did not commit." *Fernandez*, 558 F. Supp. 2d at 494; *Petronio*, 2010 WL 3564269 at *16. Accordingly, I respectfully recommend that Petitioner's procedural default be excused and the merits reached on his legal insufficiency claim.

## B. Merits

### 1. *Standard of Review*

If a state court decision was adjudicated on the merits, a federal court may only grant the petition upon finding that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In determining whether the state court's decision was an unreasonable application of federal law, an objective standard of reasonableness should be applied. *Yung v. Walker*, 341 F.3d 104, 109-10 (2d Cir.

2003).  Thus, habeas relief may be granted if a state court decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).  In determining whether the decision is based on an unreasonable determination of the facts, a state court's determinations of fact shall be "presumed to be correct" and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

If, however, the state court decision was not adjudicated on the merits, but the federal court finds that the merits of the petition should be reached (*e.g.*, after excusing procedural default for cause and prejudice or to prevent a fundamental miscarriage of justice), then the petitioner is entitled to *de novo* review on those claims.  *See* 28 U.S.C. § 2254(d); *Cone v. Bell*, 129 S.Ct. 1769, 1784 (2009) (reviewing a petitioner's *Brady* claim *de novo* since Tennessee state courts did not decide claim on merits).  Accordingly, Johnson is entitled to *de novo* review of his legal sufficiency claim.  However, for the remainder of his claims where there was a decision on the merits, the state court decisions must be reviewed under AEDPA's deferential standard.

### 2.  *Ground 1 - Legal Insufficiency for Depraved Indifference Murder*

Due process requires that a defendant be convicted only where the prosecution has proven the accused's guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979).  Therefore, where "no rational trier of fact could find guilt beyond a reasonable doubt," the conviction violates the petitioner's constitutional rights.  *Id.* at 317.  Before reaching the question of whether the evidence was legally sufficient in Petitioner's case, however, the Court must flesh out what constitutes depraved indifference murder as applied to the review of

Petitioner's claim since the law was undergoing substantial change at the time of his trial through the time his conviction became final.

### a. _Applicable Standard for Depraved Indifference Murder_

Courts have found that a defendant may benefit from a change in the law that occurs prior to the date of final conviction. _E.g., Fernandez_, 558 F. Supp. 2d at 498-501; _Petronio_, 2010 WL 3564269 at *8. Specifically, New York courts have found that the change in interpretation of the depraved indifference statute was applicable to defendants whose convictions pre-dated the change, but whose cases were still pending on direct appeal. _See Fernandez_, 558 F. Supp. 2d at 498-501 (citing _e.g._, _People v. Garrison_, 39 A.D.3d 1138, 1139 (4th Dep't 2007) (January 2003 conviction); _People v. Dickerson_, 42 A.D.3d 228, 238, (1st Dep't 2007) (August 2002 conviction); _People v. Ziminski_, 34 A.D.3d 507, 508 (2d Dep't 2006) (November 1999 conviction)). Moreover, "the problem with not applying new rules to cases pending on direct review is 'the _actual inequity_ that results when the Court chooses which of many similarly situated defendants should be the chance beneficiar[ies]' of a new rule." _Griffith v. Kentucky_, 479 U.S. 314, 323 (1987) (emphasis in original) (quoting _United States v. Johnson_, 457 U.S. 537, 556 n. 16 (1982)). Therefore, Petitioner is entitled to review of his claim based on the law as it was at the time his conviction became final, May 29, 2006, rather than the time of trial. _See, e.g., Gaskin v. Graham_, No. 08-CV-1124 (JB), 2009 WL 5214498, *10 (E.D.N.Y. Dec. 30, 2009) (reviewing habeas petition as outlined through _Suarez_ where conviction became final on May 2006).

Respondent contends that when the Appellate Division denied Petitioner's direct appeal, the controlling law was still _People v. Register_, 60 N.Y.2d 270 (1983) and the more recent

decision in *People v. Sanchez*, 98 N.Y.2d 373 (2002), which basically reaffirmed the *Register* standard. Respondent, therefore, asserts that these are the controlling cases for review of Petitioner's claim. Respondent's contention unfairly minimizes the impact of *People v. Hafeez*, 100 N.Y.2d 253 (2003), *People v. Gonzalez*, 1 N.Y.3d 464 (2004), *People v. Payne*, 3 N.Y.3d 266 (2004), and *People v. Suarez*, 6 N.Y.3d 202 (2005) (per curiam)—all of which were decided prior to the denial of Petitioner's application for leave to appeal the Appellate Division decision and all of which represent a significant departure from the *Register* standard.

Although *Register* and *Sanchez* were not expressly overruled until *People v. Feingold*, 7 N.Y.3d 288 (2006), a brief examination of the quartet of preceding depraved indifference cases reveals that the standard enunciated in *Register* was no longer controlling after those decisions. Indeed, in *Feingold* itself, the Court of Appeals recognized that starting with *Hafeez*, it "pointed the law in a new direction," and that it was only addressing the *mens rea* element and explicitly overruling *Register* because the unique facts of *Feingold* required the Court to do so. *Id.* at 294. Prior to *Feingold*, the Court felt "[i]t was enough to say—and [the Court] said it repeatedly—that those defendants [in *Hafeez*, *Gonzalez*, *Payne*, and *Suarez*] did not commit depraved indifference murder because depravity or indifference was lacking." *Id.*

Under the *Register* standard, juries were to focus "not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct." 60 N.Y.2d at 276. In *Sanchez*, the Court of Appeals reaffirmed this standard finding that a one-on-one shooting at point-blank range between friends was depraved indifference, rather than intentional murder because of its "sudden, spontaneous, and not well-designed" nature. 98 N.Y.2d at 377-378. However, by the

time Petitioner's conviction was final, depraved indifference murder was characterized by the defendant's "indifference" toward whether the victim lived or died, *Suarez*, 6 N.Y.3d at 211, and such indifference could generally not exist if there was evidence of "manifest intent." *See Payne*, 3 N.Y.3d at 271. Moreover, the circumstances of *Sanchez* were distinguished from those in *Hafeez*, *Gonzalez*, *Payne*, and *Suarez* because the shooting, in *Sanchez*, endangered not only the victim, but also children playing nearby. *Hafeez*, 100 N.Y.2d at 259; *Gonzalez*, 1 N.Y.3d at 468; *Payne*, 3 N.Y.3d at 271; *Suarez*, 6 N.Y.3d at 213 n.7. After *Suarez*, *Sanchez* was best understood as part of a narrow exception of cases in which a one-on-one shooting qualified as depraved indifference because "others were *actually endangered*." 6 N.Y.3d at 213 n.7 (emphasis in original) (distinguishing *Sanchez* and *Gonzalez* because in *Sanchez* others were endangered).

The Court of Appeals began the departure from *Register* in *Hafeez*, decided June 10, 2003 (just six days prior to the jury charge in Johnson's case). In *Hafeez*, a jury convicted the defendant of depraved indifference murder, where the defendant and a co-defendant plotted for months to lure the victim out of a bar to exact revenge. 100 N.Y.2d at 256-57. The plot resulted in the stabbing of the victim, for which the defendant was charged and convicted on a theory of accomplice liability. *Id.* at 257. The Court found that the evidence was consistent with intentional, not depraved indifference, murder because this was "a quintessentially intentional attack directed solely at the victim." *Id.* at 258. Therefore, the People could not, as a matter of law, meet their burden to "show that defendant's acts were 'imminently dangerous and presented a very high risk of death to others.'" *Id.* at 259 (citing *Register*, 60 N.Y.2d 270).

Arguably, this decision was still in line with the *Register* standard; however, the Court of Appeals was beginning to draw the line between manifest intent and depravity.

In 2004, the Court went farther to distinguish between intentional and depraved indifference murder. First in *Gonzalez*, evidence adduced at trial indicated that the defendant walked into a barber shop and shot his victim nine times. 1 N.Y.3d at 465. The defendant claimed that he was afraid of the victim, which caused him to panic when he saw the victim in the shop, which then led to him "blacking out" during the shooting. *Id.* at 466. After a jury acquitted Gonzalez of intentional murder, they convicted him of depraved indifference murder; however, the Appellate Division reversed the conviction for legally insufficient evidence, which the Court affirmed. *Id.* Here, too, the Court found that the defendant was guilty of an "intentional shooting or no other" since he aimed a gun and shot ten times at close range after the victim had fallen. *Id.* at 467. The Court explained:

> Depraved indifference murder differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct . . . .
> But where, as here, a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct.

*Id.*

Later that year in *Payne*, a defendant was convicted of depraved indifference murder when he went to his victim's home armed with a 12-gauge shotgun and shot him at point-blank range. 3 N.Y.3d at 269. Reversing the conviction, the Court explained "[t]he use of a weapon can never result in depraved indifference murder when, as here, there is a manifest intent to kill." *Id.* at 271. Absent extenuating circumstances (such as firing into a crowded room), "a

one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."[22]  *Id.* at 272.  "Moreover, it should be obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide.  Firing more rounds or inflicting more wounds does not make the act more depravedly *indifferent*, but more intentional."  *Id.* (emphasis in original).

Finally, in *Suarez*, decided after the Appellate Division affirmed Johnson's conviction, but before his request for leave to appeal was denied, the Court reiterated that "a defendant who intends to injure or kill a particular person cannot generally be said to be 'indifferent'— depravedly or otherwise—to the fate of that person."  6 N.Y.3d at 211.  In both cases before the *Suarez* Court, the defendants' convictions of depraved indifference murder were overturned because the one-on-one stabbings in the heat of argument were legally insufficient for depraved indifference murder.  *Id.* at 216.  Relevant to Johnson's case, defendant Suarez's act of stabbing his victim in the throat, chest, and abdomen evinced either intent to kill or intent to cause serious injury, but could not, as a matter of law, evince depravity.  *Id.*

So while *Register* was not explicitly overruled until *Feingold*,[23] it is clear that the depraved indifference statute "gradually and perceptibly" changed before Johnson's conviction

---

[22] In a footnote, Respondent suggests that the Appellate Division may properly have ignored this language as "dicta;" however, the Court of Appeals was clearly trying to instruct lower courts on situations that are appropriate (and inappropriate) for the depraved indifference charge, presumably in an effort to prevent a continued wave of legal insufficiency claims.  As such, I do not believe it to be irrelevant "dicta."  Moreover, the Appellate Division did not ignore the language, but rather found the insufficiency issue to be unpreserved for review, and instead made no decision on the merits of Johnson's claim or the applicability of *Payne*.

[23] *Feingold* was argued a mere nine days after the Court of Appeals denied Johnson leave to appeal, and was decided less than one month thereafter.

became final in May 2006. *See Policano v. Herbert*, 7 N.Y.3d 588, 602-03 (2006) (responding to certified questions of the Second Circuit regarding the state of depraved indifference law in 2001 and noting the progression of cases from *Hafeez* to *Feingold*). Therefore, it is appropriate to use the interpretation as developed through *Hafeez*, *Gonzalez*, *Payne*, and *Suarez* to evaluate the legal sufficiency of Johnson's depraved indifference conviction, as would have been appropriate for the Appellate Division to do had it reached the merits of Johnson's claim. *See, e.g., Gaskin*, 2009 WL 5214498, at *10.

### b. *Petitioner's Depraved Indifference Murder Conviction*

The evidence at Johnson's trial, viewed even in the light most favorable to the prosecution, simply does not support a conviction of depraved indifference murder as it has been interpreted in *Hafeez* through *Suarez*. The only accounts of the shooting came from Johnson's written and videotaped confessions and a defense eyewitness who identified another shooter. In Johnson's confessions, he explained that he "had no choice" but to shoot Chandler because he thought he "would have been dead" if Chandler made it back to his friends. (Tr. 179.) He shot at the victim "and chased him down." (Tr. 179.) The evidence at trial was that Chandler was shot at least six times, and that nine or ten shots were fired in all. (Tr. 115-16.) Like the defendant in *Suarez*, whether Johnson's intent was to kill or to cause serious injury to Chandler, it is clear that he was not "indifferent" as to Chandler's fate. The intentionality of the act does not seem to have been lost on the prosecutor who stated at sentencing: "What is abundantly clear, Judge, is that [Johnson] didn't want Calvin Chandler to ever get up from the ground again." (Sent. Tr. 6.)

Despite Respondent's contentions that Johnson was "wildly" shooting evidence by the fact that many shots hit his legs, this does not negate the intentionality of the act. First, by his

own admission, he was chasing after Chandler and shooting.  (Tr. 179.)  Johnson's shots may not

have hit his target every time, but it was clear who he aimed every shot at, not to mention that six

of those shots actually hit Chandler.  That Johnson missed a few times, while running after and

shooting at Chandler, does not negate the fact that he fully intended for Chandler to be shot,

which can only lead to an inference that Johnson intended to kill or to cause serious injury.

Moreover, firing six to ten times at the victim is clear evidence of intent, not indifference.

Respondent characterizes Johnson's actions as "wildly" shooting on a crowded street,

(Resp. Mem., at 8), which if there is a reasonable view of the evidence to support this argument,

the shooting may well fit into the narrow exception of one-on-one shootings wherein others are

actually endangered.  However, the evidence presented at trial belies Respondent's

characterization of the shooting.  In arguing that a jury could reasonably have concluded that

Johnson was guilty of depraved indifference, rather than intentional murder, Respondent

contends that the shooting took place on a public street, where Johnson's "friends were present

and in harm's way."  (Resp. Mem., at 8.)  Neither of these factors are compelling.

First, it is true that Johnson and Chandler were on a public street; however, other than

Johnson's friends, there was no evidence that anyone else was present.  Second, although

Johnson's friends were on the street, the "mere presence of third persons at the scene of a killing

does not convert an intentional [act] directed at a particular victim into depraved indifference

murder unless others are *actually endangered*."  *Suarez*, 6 N.Y.3d at 213 n.7.  No evidence in the

record suggests that Johnson's friends were in harm's way since, in his own words, Johnson

"chased" after Chandler, who was running away from Johnson and his friends.  Moreover, the

only other eyewitness account of the shooting incident, given by a defense witness, was that

whoever shot Chandler (she identified "Base" as the shooter) did so after chasing him over a fence with only one friend following them over the fence. (Tr. 406.)[24] Assuming that the person she saw was Johnson, this account does not support an inference that anyone but Chandler was endangered in the course of the shooting.

The jurors should never have been instructed on depraved indifference murder since all the evidence pointed to manifest intent to kill or seriously injure Chandler. As defined by the New York Court of Appeals, no rational juror could have found Johnson guilty of depraved indifference murder beyond a reasonable doubt. In fact, as a matter of law, Johnson did not commit depraved indifference murder. Johnson was acquitted of intentional murder, and could not be guilty of the crime for which he was convicted. Therefore, Johnson's conviction was supported by legally insufficient evidence.

Having found that Johnson did not have the requisite intent to kill and acquitting Johnson of that charge, it is possible that the jury would have found Johnson guilty of the lesser-included offenses of manslaughter in the first or second degree, on which they were also instructed. However, since the jurors were erroneously instructed to reach the charge of depraved indifference murder first, they never reached those other charges. It is outside the purview of this Court to speculate on whether the jury would have convicted Johnson of either manslaughter

---

[24] Although it may be presumed that the jury disregarded the eyewitness testimony, at least as to the identity of the shooter since they found Johnson guilty, I mention it only because it is the only other firsthand account of the shooting in the record. Moreover, the prosecutor actually gave credence to her account, except the identification of Base as the shooter, in his arguments at sentencing. Assuming then, that there are may be some inferences to be drawn in favor of the prosecution, it is worth considering whether this alternate version of events supported a finding a depraved indifference murder.

charge, but since the evidence was legally insufficient to support his conviction for depraved

indifference murder, I respectfully recommend that Johnson's petition be granted.

**3.** ***Grounds 2 and 3 - Ineffective Assistance of Trial Counsel***

To establish an ineffective assistance of counsel claim, the petitioner must prove both that

the attorney's performance was deficient and that he was prejudiced by the attorney's deficient

performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must first

prove that the attorney did not provide "reasonably effective assistance," as measured by

"prevailing professional norms." *Id.* at 687-88. The reviewing court must not judge counsel's

decisions using the wisdom of hindsight, but rather consider counsel's decisions in the specific

circumstances and from the same perspective as counsel at the time of trial and determine

whether those decisions were reasonable. *Id.* at 689. Moreover, informed strategic choices are

"virtually unchallengeable." *Id.* An attorney's errors alone are not enough to grant a habeas

petition. *Id.* at 691. The defendant must also show "that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694.

Petitioner asserts that he received ineffective assistance of trial counsel based on

counsel's failure to preserve the legal sufficiency issue for appeal and to make a motion for a

N.Y.C.P.L. § 730 hearing. However, I already recommended that his N.Y.C.P.L. § 730 claim be

deemed procedurally barred based on an independent and adequate state law ground,[25] so I will only address Petitioner's claim based on the failure to preserve the legal sufficiency issue.

Justice Demarest explained in detail her reasons for denying Petitioner's § 440 motion to vacate based on ineffective assistance of counsel, and her decision was neither contrary to, nor an unreasonable application of, the *Strickland* standard. For essentially the same reasons explained by Justice Demarest, Petitioner cannot establish ineffective assistance of trial counsel on this ground.

Whether it was the failure to object to the depraved indifference count at the time of the jury charge, or failure to move to dismiss for legally insufficient evidence, the issue is the same: Was the failure to preserve the issue unreasonable under "prevailing professional norms"? Counsel's performance must be evaluated from the perspective of the state of the law at trial, so as to determine what may or may not have been reasonable at the time. Therefore, although Petitioner gets the benefit of a significant shift in the law on his legal sufficiency claim up to his final conviction, counsel cannot be faulted for failing to foresee at the time of trial the significant change in the law that was about to occur. So, to review defense counsel's performance, the Court must consider the state of depraved indifference law at the time of trial.

At the time of Petitioner's trial in 2003, the *Register* standard applied. In *Register*, the Court of Appeals found that the depraved indifference statute required the jury to focus "not

---

[25] Even if reached on the merits, it is impossible to find for Petitioner. The record is too sparse on the issue to meet Petitioner's burden of proving that Stutman's decision not to make a N.Y.C.P.L. § 730 motion was unreasonable or that the outcome of the proceedings would have been different if he had. There is no evidence in the trial record that suggested that Petitioner was incapacitated, nor did Petitioner submit any evidence to that effect in connection with this petition. Given that there is no evidence in support of Petitioner's claim, even if the merits are reached on this ground, the petition should not be granted.

upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by [a] defendant's reckless conduct." 60 N.Y.2d at 276. Under that standard, charging a defendant with intentional and depraved indifference murder in the alternative was appropriate. *See, e.g.*, *People v. Sanchez*, 98 N.Y.2d 373, 377-378 (2002); *People v. Baptiste*, 306 A.D.2d 562 (3d Dep't 2003) *see also Parsons v. Walsh*, No. 01-CV-5840, 2003 WL 21143074, at *24 (E.D.N.Y. May 12, 2003) ("[T]he fact that the prosecutor argued that the murder was intentional and the court charged the jury as to both counts does not mean that there was insufficient evidence to support a depraved indifference murder charge.").

In *People v. Sanchez* (decided only a year before Petitioner's trial), the Court of Appeals found that a one-on-one shooting at point-blank range between friends was depraved indifference, rather than intentional murder. 98 N.Y.2d at 377-378. The Court concluded that given that the shooting was "sudden, spontaneous, and not well-designed to cause imminent death," a reasonable jury could have found that the shooting was reckless, rather than intentional. *Id.* at 377. In that case, the defendant pointed a gun straight at the deceased's chest during a heated argument and fired from close range. *Id.* at 375-76.

In light of the departure from *Register* and *Sanchez* while Petitioner's case was pending appeal, Petitioner was prejudiced by the failure to preserve legal sufficiency for review; however, Petitioner's counsel cannot be faulted for not knowing the Court of Appeals was about to change the standard for depraved indifference murder in his client's favor. Given the similarity between

Petitioner's case and *Sanchez*,[26] it cannot be said that it was unreasonable for Petitioner's trial counsel not to object to both counts of murder offered in the alternative. Based on the state of depraved indifference murder law at the time, the People had a colorable depraved indifference murder charge against Petitioner and so, the decision not to object to a colorable claim did not render trial counsel's assistance defective. Moreover, as discussed above, Stutman did attempt to preserve the issue for review on a motion to dismiss, which the trial court recognized and rejected as a meritless legal sufficiency argument. Therefore, I recommend that the petition be denied.

### 4. *Ground 4 - Ineffective Assistance of Appellate Counsel*

The *Strickland* standard applies with equal force to claims for ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (on remand court must apply *Strickland* standard to evaluate effectiveness of appellate counsel); *Smith v. Murray*, 477 U.S. 527, 535 (1986) (applying *Strickland* test to review ineffective assistance of appellate counsel claim). When evaluating a claim that appellate counsel was deficient in failing to raise a particular issue on appeal, the court must bear in mind that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288.

---

[26] *Hafeez*, discussed *supra*, was decided the same month as Petitioner's trial. Assuming that trial counsel should have been aware of the decision, it is not clear that the decision had a significant impact on the depraved indifference statute as applied to Petitioner since the defendant's actions in that case were not only a direct attack, but also premeditated, making it a "quintessentially intentional" act. *Hafeez*, 100 N.Y.2d at 256-58. A reasonable attorney at the time may have thought *Sanchez* was a more relevant decision in Petitioner's case given the similarity of the underlying actions of Petitioner and the defendant in *Sanchez*.

The Appellate Division's finding that Petitioner failed to establish ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, the standard set forth in *Strickland*. Petitioner argued (and continues to argue) that the failure of appellate counsel to raise an ineffective assistance of trial counsel claim on appeal rendered her representation of Petitioner deficient; however, Petitioner's argument is completely meritless.

First, although Ascher did not provide much case law or argument on the issue of ineffectiveness of trial counsel, she did, in fact, raise the issue in Petitioner's appellate brief. (Exh. A, at 28.) And it appears that the Appellate Division at least briefly entertained the notion, citing that all of Petitioner's remaining claims were meritless (after declining to reach the merits of his legal sufficiency claim). *Johnson*, 22 A.D.3d at 601.

Second, even if she had not mentioned the issue at all, Petitioner still could not establish that Ascher's performance was deficient. Ascher's brief was well-written, well-organized, and well-reasoned. Moreover, she raised a viable legal claim on appeal. Perhaps it would have been a wiser course of action to fully brief the ineffective assistance of trial counsel argument, but which claims to bring and how to argue them are ultimately strategic choices. Judging by the content of Ascher's brief, it is clear that she made a thorough investigation into the law and facts of the case. She was not required to raise every colorable issue on appeal. Moreover, as explained above, the ineffective assistance of trial counsel claim was not a winning argument. As such, her strategic decision to focus on the legal sufficiency claim was reasonable. Therefore, I respectfully recommend that the petition not be granted on these grounds.

## CONCLUSION

Based on all of the foregoing, I respectfully recommend that the petition for a writ of habeas corpus be granted on the ground that the evidence at trial was legally insufficient to support Petitioner's conviction for depraved indifference murder, but be denied in all other respects. I further recommend that Johnson's conviction for depraved indifference murder be vacated, and that the case be remanded to the state courts for further proceedings not inconsistent with this Report.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Kiyo A. Matsumoto within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


Dated: November 8, 2010
      Brooklyn, New York

                             *Ramon E. Reyes, Jr.*
                             **Ramon E. Reyes, Jr.**
                             **United States Magistrate Judge**