UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KEITH JOHNSON,

               *Petitioner*,        **ORDER ADOPTING IN PART AND**
                                       **MODIFYING IN PART REPORT**
   -against-                   **AND RECOMMENDATION**

J.F. BELLNIER,                 09-CV-00381(KAM)(RER)

               *Respondent*.
----------------------------------X
**MATSUMOTO, United States District Judge:**

       On January 23, 2009, Keith Johnson ("petitioner" or

"Johnson") filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. (*See* ECF No. 1, Petition

("Pet.").) The court referred the petition to Magistrate Judge

Ramon E. Reyes for a Report and Recommendation on April 12,

2010. (*See* ECF No. 15, Order dated 4/22/2010.) Judge Reyes

issued a Report and Recommendation ("R&R") on November 8, 2010,

recommending that the habeas petition be granted in part and

denied in part. (*See* ECF No. 18, R&R dated 11/8/2010.)

Respondent filed timely objections to the R&R, and petitioner

responded. (*See* ECF No. 22, Respondent's Objections to

Magistrate Judge's R&R ("Obj."); ECF No. 22, Respondent's

Memorandum of Law in Support of Objections to Magistrate Judge's

R&R ("Obj. Mem."); ECF No. 25, Reply in Support of R&R and in

Response to Objections Filed by Respondent ("Reply to Obj.").)

Having undertaken a *de novo* review of the record in light of the

respondent's written objections pursuant to 28 U.S.C.

§ 636(b)(1)(C), the court adopts in part and modifies in part

the R&R.

## BACKGROUND

## I.  The Crime

The court assumes familiarity with the detailed facts

and procedural history of this case, as accurately set out in

Judge Reyes's R&R.  (*See generally* R&R.)  The relevant facts are

repeated here only to the extent necessary for the court's

analysis.  Petitioner Johnson was convicted, after a jury trial,

of depraved indifference murder, and sentenced to a prison term

of twenty-five years to life.  (*See* Pet. at 2-3.)  The charges

against Johnson stem from the killing of Calvin Chandler

("Chandler") on September 23, 2002.  (*See* Pet. at 6; *see also*

ECF No. 10, Aff. in Opp'n to Habeas Petition ("Opp'n") at 1-2.)

According to Johnson's petition and his written and videotaped

confessions, the facts surrounding Chandler's death are as

follows:

On September 23, 2002, while Johnson was driving a

friend's Ford, a passenger in the car spotted Chandler[1] driving

Johnson's black Lexus.  (Pet. at 6; ECF No. 11, Ex. H, Trial

Transcript ("Trial Tr.") at 178; ECF No. 27, Ltr. Filing with

the Court a DVD and Transcript of Petitioner's Videotaped

---

[1] Petitioner refers to Chandler as "Milk" in his written and videotaped confessions.

Statement ("Confession Tr.") at 2-3, 6-7.)  Johnson caught up
with Chandler, got out of the Ford and into the driver's seat of
the Lexus, and Chandler moved to the passenger's seat.  (Pet. at
6; Trial Tr. at 178; Confession Tr. at 3, 7-8.)  Johnson then
drove with Chandler to the Marlboro Houses in Coney Island,
where several of Johnson's friends were waiting.  (Pet. at 6;
Trial Tr. at 178; Confession Tr. at 4.)  One of Johnson's
friends, "Base," hit Chandler in the head with a gun and dragged
him into the hallway of the building.  (Pet. at 6; Trial Tr. at
179; Confession Tr. at 5, 10-11, 12.)  At some point, Chandler
was released and began walking away from the building.  (Pet. at
6; Trial Tr. at 179; Confession Tr. 5, 14.)  Johnson feared that
if Chandler reached his family and friends, Johnson would be
held responsible for the attack on Chandler and "[he] would have
been dead."  (Trial Tr. at 179 ("I felt that I had no choice.");
Pet. at 6-7 ("[Petitioner] believe[d] his life was in danger and
had to do something before someone found out that [petitioner]
was the reason Chandler was hit with a gun."); Confession Tr. at
5 ("I was gonna get done in."), 14 ("And I knew I had to do
something or it was gonna get done to me.").)  Johnson grabbed a
gun, ran after Chandler, and shot at him several times.  (Pet.
at 7; Trial Tr. at 179; Confession Tr. at 5, 14.)  Soon
thereafter, Chandler was found dead with six gunshot wounds, two
of which could have been fatal.  (Trial Tr. at 235-37.)

## II.  **Trial and Sentence**

Petitioner Johnson was charged by Kings County Indictment Number 7782/2002 with two counts of murder in the second degree – intentional murder and depraved indifference murder – one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree.  (*See* Opp'n at 2; Obj. at 2.)  A jury trial commenced on June 3, 2003, with Judge Carolyn E. Demarest presiding.  (*See* Trial Tr.)  The prosecution presented into evidence Johnson's written and videotaped confessions.  The written confession was read to the jury by Detective Taylor. (*Id.* at 177-79.)  The videotaped confession was authenticated by Assistant District Attorney Barry and played for the jury.  (*Id.* at 259-60.)  The prosecution also presented the testimony from two police officers, Police Officer Acomata and Police Officer Caraballo, a ballistics expert, Detective Valenti, and a doctor from the Chief Medical Examiner's Officer, Dr. Gutierrez, all of which corroborated, at least in part, Johnson's version of the events surrounding Chandler's death.  (*See id.* at 111-13, 142-44, 223-24, 235-37.)

The defense attacked the credibility of the written and videotaped confessions by presenting the testimony of Bettye and Jeannine Johnson, petitioner's grandmother and aunt, who testified that police officers coerced the petitioner into

confessing to the murder by, among other things, threatening his family.  (*Id.* at 286-325, 326-61.)  Additionally, the defense presented the testimony of Tyesha Blakely, an eyewitness to the murder, who testified that "Base," and not Johnson, fired the shots at Chandler that night.  (*Id.* at 405-07, 561.)

On June 9, 2003, at the close of the prosecution's case, the court held, off the record, what appears to have been a preliminary charging conference.  Thereafter, the prosecutor stated that the court held "somewhat of a charge conference yesterday" and that the State was "still asking to give the depraved indifference charge of murder two."  (*Id.* at 362-63.) Judge Demarest suggested that she had declined the request the prior day, responding that she "wouldn't be inclined to change [her] ruling."  (*Id.*  at 363.)   A formal charging conference was held on June 12, 2003, during which the prosecution again requested that the jury be instructed on two counts of murder in the second degree – intentional murder and depraved indifference murder.  (*Id.* at 514-16.)  Judge Demarest denied the request, stating that the evidence presented by the prosecution would only support intentional acts and that it would therefore be inappropriate to submit both theories of murder to the jury. (*Id.* at 516-17.)  Defense counsel noted his agreement with that ruling.  (*Id.* at 516.)  The judge, however, allowed the prosecution to present authority that would support charging the

jury with depraved indifference murder.  (*Id.* 516-17.)  Some
off-the-record discussions must have taken place because, on
June 16, 2003, Judge Demarest stated to the parties that,
consistent with her prior communication with them, she would
also submit the depraved indifference murder charge to the jury.
(*See id.* at 522.)  No explanation was given for the change in
ruling, and no objection by the defense was recorded on the
trial record.

Judge Demarest instructed the jury on intentional
murder in the second degree, depraved indifference murder in the
second degree, manslaughter in the first degree, manslaughter in
the second degree, and criminal possession of a weapon in the
third degree.  (*Id.* at 615-26.)  The jury was instructed to
start with the intentional murder count and work its way down
the list to depraved indifference murder, manslaughter in the
first degree, manslaughter in the second degree, and finally
criminal possession of a weapon.  (*Id.* at 615, 625-26.)  If a
guilty verdict was reached on a count, the jury was instructed
to go no further.  (*Id.* at 615.)  With respect to the depraved
indifference murder count, the court instructed the jury as
follows:

> The penal law provides a person is guilty of
> murder in the second degree when under
> circumstances evincing a depraved
> indifference to human life, he or she
> recklessly engages in conduct which creates

a grave risk of death to another person and
thereby causes the death of that person.  A
person acts recklessly with respect to
another person's death when that person
engages in conduct which creates a
substantial, unjustifiable and grave risk
that another person's death will occur, and
when he is aware of and consciously
disregards that risk, and when that risk is
of such nature and degree that disregard of
it constitutes a gross deviation from the
standard of conduct that a reasonable person
would observe in this situation. . . .
Conduct evincing a depraved indifference to
human life is much more serious and
blameworthy than conduct which is merely
reckless, it is conduct which beyond being
reckless is wanton, so deficient in moral
sense and concern, so devoid for the life
and lives of others as to equal in
blameworthiness intentional conduct which
produces the same result.  In determining
whether a person's conduct evinced a
depraved indifference to human life, a jury
would have to decide whether the
circumstances surrounding the person's
reckless conduct when objectively viewed
made it so uncaring, so callous, so
dangerous and so inhuman as to demonstrate
an attitude of total and utter disregard for
life of the person endangered.

(Id. at 618-20.)  The court repeated virtually identical

instructions to the jury after receiving two notes, the first

asking for the charges in writing, which the court refused, and

the second asking for the charges to be re-read.  (*Id.* at 644-

48, 682-85.)

The jury returned a verdict on June 18, 2003.  The

jury acquitted Johnson of intentional murder in the second

degree, but found him guilty of depraved indifference murder in

the second degree.  (*Id.* at 691-92.)  Defense counsel did not

make any motions regarding the jury verdict at that time, but,

upon inquiry by the court, reserved any motions by the defense.

(*Id.* at 695-96.)

On July 9, 2003, at sentencing, defense counsel noted

that he failed to make the appropriate motion at the end of the

case, and requested at that time that the court "not allow the

verdict of guilty to stand, and direct a verdict of not guilty,

in that there [was] no reasonable view of the evidence by which

a verdict of guilty could be reached."  (ECF No. 11, Ex. H,

Sentence Transcript ("Sent. Tr.") at 2-3.)  Judge Demarest

denied the request, finding that "the evidence presented to the

jury would sustain the verdict and was sufficient."  (*Id.* at 3.)

The prosecutor argued against any leniency by the court in

sentencing Johnson, noting that the way Johnson had killed

Chandler was "particularly aggregious [sic] and particularly

severe" and that it was "abundantly clear" that "Johnson didn't

want Calvin Chandler to ever get up from the ground again, and

he fired as many shots into him at close distance right on top

of him even as he was helpless to make sure that wouldn't

happen."  (*Id.* at 5-6.)  Judge Demarest sentenced petitioner to

the maximum sentence of twenty-five years to life, finding that

the killing of Chandler "was, essentially, a cold-blooded

killing."  (*Id.* at 10.)

## III. **Direct Appeal**

Johnson, represented by new counsel on appeal, filed a timely notice of appeal of his conviction. (*See* ECF No. 11, Ex. A, Br. for Defendant-Appellant at 2.) On appeal, petitioner argued that the evidence was legally insufficient to support his conviction for depraved indifference murder and that the verdict was against the weight of the evidence. (*Id.* at 27.) Recognizing that the issue was unpreserved for appellate review, petitioner requested that the Appellate Division reach the legal insufficiency question in the interest of justice or, alternatively, that it reverse the conviction because his trial counsel was ineffective for failing to move to dismiss the depraved indifference conviction on legal insufficiency grounds. (*Id.* at 27-28.) The State opposed the relief requested on appeal, arguing that the legal insufficiency question was unpreserved for appellate review, that review on the merits would not serve the interest of justice, and that the evidence was legally sufficient to support the conviction for depraved indifference murder. (*See* ECF No. 11, Ex. B, Respondent's Br. at 13-14, 23.)

On October 11, 2005, the Appellate Division, Second Department, affirmed Johnson's conviction. *See People v. Johnson*, 801 N.Y.S.2d 755, 755 (N.Y. App. Div. 2005). The Appellate Division concluded that the legal insufficiency issue

was "not preserved for appellate review" and it "declined to reach the issue in the exercise of [its] interest of justice jurisdiction." *Id.* Further, the Appellate Division concluded that Johnson's "remaining contentions [were] without merit." *Id.*

On February 28, 2006, the New York Court of Appeals denied Johnson leave to appeal. *See People v. Johnson*, 6 N.Y.3d 814 (2006). As noted by Judge Reyes in the R&R, Johnson's conviction became final ninety (90) days later, on May 29, 2006, when his time for filing a petition for a writ of certiorari to the Supreme Court expired. (*See* R&R at 6.)

## IV. *Coram Nobis* and § 440.10 Motion

Petitioner filed a motion for a writ of error *coram nobis*, dated January 19, 2007, seeking to vacate his conviction on the ground that his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal. (ECF No. 11, Ex. C, Mot. for Writ of Error Coram Nobis.) The State opposed the petition for a writ of error *coram nobis*, arguing that appellate counsel did raise the ineffective assistance of trial counsel issue on appeal, and therefore Johnson had failed to establish that he received ineffective assistance of appellate counsel. (ECF No. 11, Ex. D, Opp'n to Petition for Writ of Error Coram Nobis.) On April 10, 2007, the Appellate Division, Second Department, denied the

petition for a writ of error *coram nobis*.  *See People v. Johnson*, 831 N.Y.S.2d 910, 910 (N.Y. App. Div. 2007).  The New York Court of Appeals denied Johnson leave to appeal on August 13, 2007.  *See People v. Johnson*, 9 N.Y.3d 877, 877 (2007).

On September 4, 2007, petitioner brought a motion pursuant to N.Y. Crim. Proc. L. § 440.10 ("§ 440.10 motion") to vacate his judgment of conviction.  (ECF No. 11, Ex. E, Petitioner's § 440.10 Motion to Vacate Conviction.)   Petitioner argued that his trial counsel was ineffective on three grounds: (1) failure to move to dismiss on legal insufficiency grounds; (2) failure to object to the depraved indifference murder jury charge; and (3) failure to move, pursuant to N.Y. Crim. Proc. L. § 730, for a competency hearing.  (*See id.*; *see also* ECF No. 11, Ex. G, Decision and Order Denying § 440.10 Motion ("Order Denying § 440.10 Mot.") at 2.)  The State opposed the motion, arguing that the ineffective assistance of counsel claim based on the failure to object to the depraved indifference murder charge was procedurally barred, and that petitioner received effective assistance of counsel.  (ECF No. 11, Ex. F, Opp'n to § 440.10 Motion.)

Judge Demarest denied petitioner's § 440.10 motion by a Decision and Order dated August 28, 2008.  (*See* Order Denying § 440.10 Mot.)  The court first found that petitioner's ineffective assistance of counsel claim with respect to the

failure to move to dismiss on legal insufficiency grounds was procedurally barred because "the record indicates that counsel did in fact make a motion to dismiss." (*Id.* at 3.) Further, the court found that "the fact that neither of defendant's claims as to the legal sufficiency of the evidence and the jury charge were preserved does not establish that counsel was ineffective for failing to make proper or timely motions" because "[b]ased on the law at the time of defendant's trial in [2003],[2] counsel acted in accordance with acceptable legal strategy." (*Id.* at 3-4.) Judge Demarest recognized that "the law of depraved indifference murder [had] recently changed," but noted that petitioner's case was governed by the law in effect at the time of his conviction, which was articulated in *People v. Register*. (*Id.* at 4.) Under that standard, the State had to show that "the defendant's reckless conduct was imminently dangerous and created a grave risk of death" and the focus for the *mens rea* element was "not on the subjective intent of the defendant but rather on an objective assessment of the circumstances surrounding the acts and the factual setting in which the risk-creating conduct occurred." (*Id.*) Given the *Register* standard, the court found that failure to preserve the legal insufficiency issue or to object to the depraved

---

[2] As noted by Judge Reyes in the R&R, Judge Demarest incorrectly states that petitioner's trial took place in 2002 when all trial transcripts are dated 2003. The court presumes this is a typographical error.

indifference murder charge were not unreasonable. (*Id.* at 7.)
With respect to petitioner's ineffective assistance of counsel
claim for failure to move for a § 730 hearing, the court
dismissed the claim pursuant to N.Y. Crim. Proc. L.
§§ 440.10(3)(a) and 440.10(4)(b), finding that petitioner
unjustifiably failed to adduce the issue on the record and that
he failed to substantiate the claim with supporting evidence and
sworn affidavits. (*Id.* at 7-8.)

Petitioner requested leave to appeal the denial of his
§ 440.10 motion to the Appellate Division, which was denied on
January 19, 2009. (*See* Opp'n at 5; Obj. at 6; ECF No. 6,
Affirmation of Keith Johnson.)

## V.    **Habeas Petition and R&R**

Petitioner filed the instant *pro se* petition for a
writ of habeas corpus on January 23, 2009. (*See* Pet.)  In his
petition, Johnson asserts four grounds for relief: (1) the
evidence at his trial was legally insufficient to support his
conviction for depraved indifference murder; (2) his trial
counsel was ineffective for failing to move to dismiss the
depraved indifference murder count on legal insufficiency
grounds and for failing to preserve the issue for appellate
review; (3) his trial counsel was ineffective for failing to
request a § 730 hearing; and (4) his appellate counsel was

ineffective for failing to raise the ineffective assistance of trial counsel claim. (*See* Pet.)

Respondent filed an answer on September 23, 2009. (Opp'n; ECF No. 10, Memorandum of Law in Support of Opposition to Habeas Petition ("Opp'n Mem.").) Respondent argued that petitioner was not entitled to habeas relief because: (1) the legal insufficiency claim was procedurally barred and meritless; (2) petitioner received effective assistance of counsel with respect to the legal insufficiency claim; (3) petitioner received effective assistance of counsel with respect to the § 730 hearing; and (4) petitioner received effective assistance of appellate counsel. (*See* Opp'n Mem.)

Petitioner, now represented by counsel, filed a reply in further support of his habeas petition on November 30, 2009. (*See* ECF No. 14, Reply in Support of Habeas Petition ("Pet. Reply").) In his reply, petitioner argued that the habeas petition should be granted because: (1) the evidence was legally insufficient to support a conviction for depraved indifference murder, the New York State contemporaneous objection rule is not an adequate and independent state ground barring review of the instant claim, and that, alternatively, petitioner established cause and prejudice to excuse any procedural default; (2) trial counsel was ineffective in failing to move to dismiss the depraved indifference murder count on legal insufficiency

grounds; and (3) appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel issue on appeal. (*See generally id.*) Petitioner did not argue in his reply the claim of ineffective assistance of trial counsel for failure request a § 730 psychiatric hearing. (*Id.*)

By Order dated April 12, 2010, the court referred the instant habeas petition to Magistrate Judge Reyes for an R&R. (*See* ECF No. 15, Order Referring Petition dated 4/12/2010.) Judge Reyes issued an R&R on November 18, 2010, recommending that the court grant the habeas petition in part and deny it in part. (*See* R&R.) Specifically, Judge Reyes recommended that the court find the legal insufficiency claim to be procedurally defaulted, and that petitioner failed to establish cause and prejudice to excuse the procedural default. (*Id.* at 14-19.) Judge Reyes recommended, however, that the court find that the procedural default should be excused because a fundamental miscarriage of justice would result if the court failed to reach the merits of the legal insufficiency claim. (*Id.* at 20-23.) Upon reviewing the merits of that claim, Judge Reyes recommended that the court, applying the New York law on depraved indifference murder in effect at the time Johnson's conviction became final, find that the evidence adduced at trial was legally insufficient to support a conviction of depraved indifference murder, and thus grant the habeas petition on this

ground.  (*Id.* at 24-33.)  Finally, Judge Reyes recommended that the court deny habeas relief on all other grounds.  (*Id.* at 13, 33-37.)

Respondent filed timely objections to Judge Reyes's R&R on December 6, 2009.  (*See* Obj.; Obj. Mem.)  Respondent argues that the court should adopt the R&R finding that petitioner failed to establish cause and prejudice to excuse the procedural default of his legal insufficiency claim, but that it should do so on different grounds, namely, that the argument in support of dismissal of the depraved indifference murder count was common at the time of Johnson's trial, even if the law had not yet begun to evolve.  (Obj. Mem. at 3-4.)  Respondent also argues that the court should reject the finding in the R&R that a fundamental miscarriage of justice would result if the court did not reach the merits of the legal insufficiency claim.  (*Id.* at 4-5, 17-24.)  Further, respondent argues that the court should reject the R&R finding that the court should apply the law as it existed at the time petitioner's conviction became final and that the evidence was legally insufficient to support the conviction for depraved indifference murder.  (*Id.* at 5-17.) Respondent did not object to the remaining findings and conclusions in the R&R.  (*See generally id.*; Obj.)

Petitioner did not file objections to the R&R. Petitioner did, however, file a reply in support of the R&R and

in response to the objections filed by respondent.  (*See* Reply

to Obj.)  The reply asserted that petitioner was actually

innocent of the crime of depraved indifference murder, and

therefore the fundamental miscarriage of justice excuse to the

procedural default was applicable, and that the evidence was

legally insufficient to support a conviction for depraved

indifference murder.  (*See id.*)  Further, petitioner asserted

that the R&R "conclusions are well reasoned and well supported

by pertinent and relevant authorities, and as such the [R&R]

should be fully adopted."  (*Id.* ¶ 16.)

          For the reasons stated below, the court adopts in part

and modifies in part the R&R.

**APPLICABLE LAW**

**I.    Review of R&R**

          To the extent that a party makes specific and timely

objections to a magistrate's findings or recommendations, the

district court must apply a *de novo* standard of review to those

portions of the R&R to which objection is made.  *See United

States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); 28

U.S.C. § 636(b)(1).  Upon such *de novo* review, the district

court "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1).  However, where no objection to an R&R has

been filed, the district court "'need only satisfy itself that

there is no clear error on the face of the record.'" *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

## II. <u>Habeas Corpus Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), established a deferential standard that federal courts must apply in reviewing state court decisions on habeas review. Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When a federal claim is not adjudicated on the merits in state court, however, courts apply the pre-AEDPA standard and review the merits of the claim *de novo*. *See Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' . . . Instead, the claim is

reviewed *de novo*."); *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (noting that the court will review the federal claim *de novo* when the court finds the claim was not adjudicated on the merits in state court); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for habeas relief has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Furthermore, a habeas petition shall not be considered unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Even if the exhaustion requirement is satisfied, federal habeas corpus review may be barred by the independent and adequate state law grounds doctrine, which provides that a federal court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

### DISCUSSION

## I.   Timeliness and Exhaustion

None of the parties object to the finding in the R&R that the habeas petition is timely and that all of the issues raised in the petition were properly exhausted in state court.

(*See generally* Obj.; Obj. Mem.)  Thus where, as here, neither party has objected to a portion of an R&R, the court "'need only satisfy itself that there is no clear error on the face of the record.'"  *Urena*, 160 F. Supp. 2d at 609-10 (quoting *Nelson*, 618 F. Supp. at 1189).

Judge Reyes found that the instant habeas was filed within the one-year statute of limitations under AEDPA because, after excluding the time during which the statute of limitations was tolled due to the pending state post-conviction collateral review proceedings, only 270 days passed from the time petitioner's conviction became final on May 29, 2006 and the filing of his petition on January 21, 2009.  (R&R at 11.) Further, Judge Reyes found that all four claims raised in the instant habeas petition had been "fully adjudicated and appealed through the state courts" and thus petitioner had properly exhausted.  (*Id.* at 11-12.)

Having reviewed the record, the parties' submissions, and the relevant case law, the court finds that the R&R findings that the instant habeas petition is timely and that petitioner properly exhausted all claims are not clearly erroneous. Therefore, the court fully adopts this portion of the R&R as the opinion of the court.

## II. __Ground 1: Legal Insufficiency Claim__

   A.   *Procedural Default: Independent and Adequate State Ground*

        None of the parties object to the R&R finding that petitioner's legal insufficiency claim is procedurally defaulted.  (*See generally* Obj.; Obj. Mem.)  As noted above, where, as here, neither party has objected to a portion of an R&R, the court "'need only satisfy itself that there is no clear error on the face of the record.'"  *Urena*, 160 F. Supp. 2d at 609-10 (quoting *Nelson*, 618 F. Supp. at 1189).

        Judge Reyes found that the legal insufficiency claim was decided by the state court on an independent and adequate state procedural ground, here, the contemporaneous objection rule.  (R&R at 14-16.)  The R&R noted that "[i]t has long been recognized that New York's contemporaneous objection rule may serve as an independent and adequate state ground barring federal review."  (*Id.* at 14.)  Upon a review of the record, Judge Reyes concluded that petitioner's trial counsel did not properly preserve the legal insufficiency claim because he failed to present a timely and specific objection during the trial.  (*Id.* at 14-16.)

        Having reviewed the record, the parties' submissions, and the relevant case law, the court finds that the R&R finding that the legal insufficiency claim is procedurally barred

because the state court decided the claim on an adequate and independent state ground is not clearly erroneous. The court, therefore, fully adopts this conclusion of the R&R as the opinion of the court.

B.   *Excuse for Procedural Default: Cause and Prejudice*

Respondent does not object to the ultimate conclusion in the R&R that petitioner cannot establish cause for his default. (Obj. Mem. at 3-4.) Nor does respondent object to the finding in the R&R that petitioner cannot show cause by way of the ineffectiveness of his trial counsel. (*Id.*) Respondent does, however, object to the additional conclusion in the R&R that petitioner cannot show cause by arguing that the legal insufficiency argument was novel and not available to counsel at the time of trial. (*Id.*) Because respondent has made specific and timely objections to this portion of the R&R, the court must apply a *de novo* standard of review to determine whether petitioner can show cause to overcome the procedural default. *See Male Juvenile*, 121 F.3d at 38; 28 U.S.C. § 636(b)(1).

The R&R correctly notes that "[i]n the event of procedural default, . . . a federal court may continue to the merits of a habeas petition if the petitioner can show cause for the default and resulting prejudice . . . ." (R&R at 16.) Judge Reyes first concluded that "Johnson cannot establish cause for his default on the basis of ineffective assistance of

counsel" because his ineffective assistance of trial counsel claim is meritless. (*Id.* at 17.) As noted in Section III, below, the court fully adopts the conclusion in the R&R that petitioner's ineffective assistance of trial counsel claim for failure to preserve the legal insufficiency issue is meritless. Because the underlying ineffectiveness claim is meritless, such claim cannot establish cause sufficient to overcome the procedural default. Consequently, the finding in the R&R that petitioner cannot establish cause by way of the ineffectiveness of his trial counsel is not clearly erroneous, and this finding is adopted as the opinion of the court.

Judge Reyes went on to find that, although other district courts had excused a procedural default on grounds other than the ineffectiveness of counsel, petitioner could not show cause under that alternative theory. (*Id.* at 18-19.) Specifically, Judge Reyes noted that other courts had excused a petitioner's procedural default when the legal insufficiency argument "could not reasonably have been within counsel's contemplation at the time of his trial." (*Id.* at 17-18 (quotation marks and citation omitted).) In the instant case, however, the R&R concluded that because "the law, though still unsettled, was beginning to evolve" at the time of petitioner's trial, the legal insufficiency argument was not so novel as to

constitute cause to overcome the procedural default. (*Id.* at 18-19.)

Respondent objects to the evolving law finding in the R&R, arguing that the conclusion that "the default cannot be excused solely because the law was already beginning to evolve [] should be rejected." (Obj. Mem. at 3.) According to respondent, the state of the development of the law is irrelevant because the legal insufficiency claim at issue in this case had been raised in numerous reported cases, and thus the argument was not sufficiently novel to constitute cause and overcome the procedural default. (*Id.* at 3-4.)

Having undertaken a *de novo* review of the record, the parties' submissions, and the relevant case law, the court respectfully modifies the evolving law finding of the R&R. As set forth by the Supreme Court in *Bousley v. United States*, 523 U.S. 614, 622-23 (1998), a habeas petitioner cannot argue that "the legal basis for his claim was not reasonably available to counsel at the time of his [trial]" when official reporters "were replete with cases involving challenges" based on the same claim. *Bousley*, 523 U.S. at 622 (quotation marks and citation omitted). Indeed, the Supreme Court noted that even if it found that counsel was unaware of the claim, "where the basis of a . . . claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and

finality counsel against labeling alleged unawareness of the objection as a cause for a procedural default." *Id.* at 623 (quotation marks and citation omitted).

In the instant case, although the state of the law was still unsettled at the time of petitioner's trial, the legal insufficiency claim with respect to depraved indifference murder had been raised a number of times in Appellate Division and Court of Appeals cases and published in official court reporters. *See, e.g.*, *People v. Hafeez*, 744 N.Y.S.2d 479 (N.Y. App. Div. 2002); *People v. Gonzalez*, 755 N.Y.S.2d 146 (N.Y. App. Div. 2003); *People v. Sanchez*, 98 N.Y.2d 373 (2002). Because the legal sufficiency of the depraved indifference charge had been "perceived and litigated" by other defense counsel, and Appellate Court and Court of Appeals decisions on the issue published in official reporters, the claim was not unavailable to trial counsel at the time of his trial. *Cf. Brown v. Ercole*, 353 F. App'x 518, 520-21 (2d Cir. 2009) (rejecting argument that an objection to a depraved indifference murder charge would have been futile because, at the time of the petitioner's trial, courts in New York had not consistently rejected the claim and in fact "from 2001 to the time of [the petitioner's] trial in 2003 the New York appellate courts reversed two depraved indifference murder convictions on the grounds that the evidence was legally insufficient"). For the foregoing reasons,

petitioner cannot establish cause to overcome the procedural default on the basis of the novelty of the legal insufficiency argument.  The R&R is respectfully modified accordingly.

C.    *Excuse for Procedural Default: Miscarriage of Justice*

Respondent objects to the finding in the R&R that "[e]ven though Johnson cannot establish cause to excuse his procedural default, a fundamental miscarriage of justice would result if his case is not reached on the merits."  (R&R at 20.) Judge Reyes reasoned that "Johnson's case presents the rare circumstance where the law upon which his conviction rests underwent a significant doctrinal change after his trial, but before his conviction became final."  (*Id.*)  Finding that "a change in the law could support an actual innocence claim sufficient to excuse a procedural default," Judge Reyes concluded that "Johnson should have had the benefit of the substantial changes in law that went into effect prior to his final conviction."  (*Id.* at 20-21.)

Respondent advances several arguments in support of his objection.  First, respondent argues that no miscarriage of justice would result from applying the procedural bar because the evidence at trial was sufficient to support petitioner's conviction.  (Obj. Mem. at 4-5.)  Second, respondent argues that the procedural bar cannot be overcome in this case because petitioner has not presented new evidence of actual innocence.

(*Id.* at 17-21.)  Respondent argues that an intervening change in
the law is insufficient to support a claim of actual innocence,
and that the contrary finding in the R&R should be rejected.
(*Id.*)  Third, respondent argues that because petitioner
"acknowledges that the evidence shows that he is actually guilty
of intentional murder," no miscarriage of justice would result
from applying the procedural default.  (*Id.* at 21-24.)

      Petitioner, in his reply in support of the R&R, argues
that "given the facts of this case [petitioner] is not and
cannot be guilty of having committed a depraved indifference
murder, ergo he is actually innocent of such crime."  (Reply to
Obj. ¶ 8.)  Specifically, petitioner argues that "the intent to
harm negates [p]etitioner having committed a depraved
indifference murder," and that "[a]s such he is *actually
innocent* of that crime."  (*Id.* ¶ 10 (emphasis in original).)

      Having undertaken a *de novo* review of the record, the
parties' submissions, and the relevant case law, the court finds
the reasoning in the R&R persuasive and overrules respondent's
objections.  First, as will be discussed below, the court finds
that, based on the evidence and the intervening change in the
law, petitioner is actually innocent of the crime of depraved
indifference murder.  That is, petitioner has demonstrated that,
"in light of all the evidence, it is more likely than not that
no reasonable juror would have convicted him" of depraved

indifference murder, as that crime was defined at the time his conviction became final, and that he is "factual[ly] innocent" of that crime. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Therefore, respondent's first objection is overruled.

Second, the court concludes that, "[c]ontrary to the [r]espondent's argument, a petitioner need not offer new evidence in order to invoke the miscarriage of justice exception." *Petronio v. Walsh*, 736 F. Supp. 2d 640, 658 (E.D.N.Y. 2010). The court recognizes that some language in Supreme Court precedent suggests that new evidence may be required to establish a claim of actual innocence and invoke the miscarriage of justice exception. In *Schlup v. Delo*, the Supreme Court noted that "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." 513 U.S. 298, 324 (1995). Other Supreme Court and Second Circuit case law, however, suggests otherwise.

In *Bousley v. United States*, the Supreme Court examined the claims of a habeas petitioner who had pleaded guilty to drug possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and to "using" a firearm "during and in relation to a drug trafficking crime, in

violation of 18 U.S.C. § 924(c)."  523 U.S. at 616.  On habeas

review, the petitioner in *Bousley* sought relief from the firearm

conviction, arguing that there was no evidence showing a

"connection between the firearms in the bedroom of the house,

and the garage, where the drug trafficking occurred."  *Id.* at

617.  While his appeal was pending, the Supreme Court decided

*Bailey v. United States*, holding that "use" of a firearm under

§ 924(c)(1) requires the a showing of "active employment of the

firearm."  516 U.S. 137, 144 (1995).

The Supreme Court first held that petitioner's claim

was procedurally defaulted by failing to raise the claim on

direct review.  *Bousley*, 523 U.S. at 621-23.  Further, the Court

held that petitioner could not show cause and prejudice to

overcome the procedural default.  *Id.* at 622-23.  The Court,

however, concluded that it was "appropriate to remand [the] case

to permit petitioner to attempt to make a showing of actual

innocence."  *Id.* at 623.  The Supreme Court in *Bousley* did not

discuss a requirement that new evidence be presented by the

petitioner; rather, the Court explained that "petitioner need

demonstrate no more than that he did not 'use' a firearm as that

term is defined in *Bailey*."  *Id.* at 624.  Thus, as another

district court in the Second Circuit has held, "*Bousley* . . .

reflects that petitioners may show actual innocence not only

through the introduction of new evidence but by highlighting

intervening changes in the law." *Petronio*, 736 F. Supp. 2d at

658; *see also Fernandez v. Smith*, 558 F. Supp. 2d 480, 494

(S.D.N.Y. 2008) (concluding that "failure to consider

[petitioner's] claim would result in manifest injustice" when

"his actions . . . simply did not constitute depraved

indifference murder as a matter of law, and it would be

manifestly unjust for him to serve a sentence for a crime that

he did not commit").

The Second Circuit, in *Fountain v. United States*,

explained the holding in *Bousley*:

> *Bousley* held that an individual who pled
> guilty to 'using' a firearm under 18 U.S.C.
> § 924(c)(1) would not be procedurally barred
> from bringing a habeas petition if he could
> demonstrate actual innocence based upon a
> subsequent Supreme Court case that
> restricted the scope of the meaning of 'use'
> within the terms of the statute.

357 F.3d 250, 254 (2d Cir. 2004).  Following this interpretation

of *Bousley*, the Second Circuit in *Fountain* examined whether a

habeas petitioner could show actual innocence to overcome a

procedural default based on the argument that "taxes, the object

of [petitioner's] scheme to defraud, do not constitute property

under the wire fraud statute after the Supreme Court's decision

in *Cleveland v. United States*, 531 U.S. 12 (2000)."  *Id.* at 255.

The petitioner did not argue that new evidence existed that

established his innocence.  Nor did the Second Circuit require

such a showing before analyzing whether petitioner could, in fact, overcome the procedural default in his case.  Rather, the actual innocence claim in *Fountain* was premised solely on the change in the law announced in *Cleveland*, and the Second Circuit concluded that "[b]ecause the decision in *Cleveland* did not affect courts' pre-existing consensus that taxes owed to a government . . . are property . . ., Fountain cannot meet his burden of demonstrating actual innocence."  *Id.* at 260.

Similarly, following the holding in *Bousley*, the Second Circuit has analyzed habeas petitioners' actual innocence claims when those claims were premised solely on the change in the law announced in *Bailey*.  In *DeJesus v. United States* and *Rosario v. United States*, the Second Circuit examined whether, in light of the intervening change in the law announced in *Bailey*, petitioners could establish actual innocence of a violation of 18 U.S.C. § 924(c) to overcome a procedural default.  *DeJesus v. United States*, 161 F.3d 99, 103-04 (2d Cir. 1998); *Rosario v. United States*, 164 F.3d 729, 733-35 (2d Cir. 1998).  The petitioners in *Rosario* and *DeJesus* did not argue that new evidence existed that established their actual innocence.  Nor did the Second Circuit require that petitioners introduce new evidence before analyzing their actual innocence claims.  Rather, as in *Fountain*, the claims of actual innocence in *Rosario* and *DeJesus* were premised solely on the change in the

law announced by the Supreme Court in *Bailey*, and the rejection

of their actual innocence claims was premised not on the lack of

new evidence[3] but on the failure to make a sufficient showing of

innocence even under the new law. *See DeJesus*, 161 F.3d at 103-

04; *Rosario*, 164 F.3d at 733-35; *cf. Brennan v. United States*,

867 F.2d 111, 117 (2d Cir. 1989) ("As a general rule, the

failure to raise a . . . claim on direct review has long

precluded assertion of the claim in a collateral proceeding.

Nevertheless, in exceptional circumstances, even a

nonconstitutional or nonjurisdictional error can result in a

complete miscarriage of justice justifying collateral relief.

In such circumstances, as, for example, where a subsequent

change in the law has resulted in a petitioner's conviction and

punishment [having been imposed] for an act that the law does

not make criminal, we have refused to apply the general rule

denying relief because of a procedural default." (internal

quotations and citations omitted)).

Respondent argues that the R&R's reliance on *Bousley*

is misplaced for several reasons. First, respondent argues that

in *Doe v. Menefee*, "the Second Circuit has held that the Supreme

Court's suggestion in *Bousley* that the procedural default could

be overcome on remand was mere dictum." (Obj. Mem. at 18.) The

---

[3] In fact, the district court held an evidentiary hearing in *Rosario*, and
nowhere in its decision does the Second Circuit address or note the lack of
new evidence presented by the petitioners to support their claims of actual
innocence. *See Rosario*, 164 F.3d at 731, 733-35.

court disagrees.  In *Doe*, the Second Circuit noted that the language in *Bousley* suggesting that "a court may consider only *admissible* evidence when assessing the reliability of a claim of actual innocence . . . is mere dictum."  *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004).  The court in *Doe* did not question the essential holding in *Bousley*, i.e. that a remand was appropriate to determine whether the petitioner in that case could establish actual innocence in light of the change in the law announced in *Bailey*.

Respondent further argues that "after *Bousley* was decided, the Supreme Court and the Second Circuit have continued to apply *Schlup*'s holding that new evidence is required to overcome a procedural bar with a finding of a fundamental miscarriage of justice," and thus the court here should similarly find that new evidence is required to establish the actual innocence claim.  (Obj. Mem. at 18-19.)  None of the cases cited by respondent, however, involved a change in the law.  Whereas new evidence may be required to establish an actual innocence claim in most cases, no new evidence is required when such claim is premised on an intervening change in the law, as evidenced by the Second Circuit's analysis in *Rosario*, *DeJesus*, and *Fountain*.  In those cases, also decided after *Bousley*, a change in the law was sufficient to elicit an analysis of petitioners' actual innocence claims.  Although the

Second Circuit ultimately concluded that the petitioners in *Rosario*, *DeJesus*, and *Fountain* could not establish their actual innocence, and thus could not overcome the procedural default, that conclusion was not based on the lack of new evidence. Rather, the Second Circuit concluded that, even under the changed law, the evidence in each case was sufficient to support the petitioners' convictions. *See Fountain*, 357 F.3d at 255-60; *Rosario*, 164 F.3d at 733-35; *DeJesus*, 161 F.3d 103-04.

According to respondent, the holding in *Bousley* is also inapplicable to this case because "unlike this case, *Bousely* involved the clarification of an old law, not the adoption of new law." (Obj. Mem. at 19.) The court disagrees. While the distinction between adoption of a new law and a clarification of an existing law may be relevant to the question of retroactivity, *see, e.g.*, *Henry v. Hicks*, 578 F.3d 134 (2d Cir. 2009),[4] there is no support for the proposition that this distinction is also relevant to a showing of actual innocence under the miscarriage of justice exception to a procedural default.

---

[4] The court notes that retroactivity is not an issue where, as here, the new law upon which a habeas claim is premised was announced before the petitioner's conviction became final. *See, e.g.*, *Bunkley v. Florida*, 538 U.S. 835, 840 (2003) (noting that "'retroactivity is not at issue' if the Florida Supreme Court's interpretation of the [law] is 'a correct statement of the law when [Bunkley's] conviction became final'" (quoting *Fiore v. White*, 531 U.S. 225, 226 (2001))).

Finally, respondent argues that reliance on *Bousley* is misplaced because "the Supreme Court did not state . . . that no new evidence would be required on remand" and because "accepting the . . . conclusion that a showing of new evidence is unnecessary to support a claim of actual innocence would yield an absurd result." (Obj. Mem. at 19-20.) The court again disagrees. Although the Supreme Court in *Bousley* did not explicitly hold that no new evidence would be required for the petitioner to establish his actual innocence claim, the court explained that "petitioner need demonstrate no more than that he did not 'use' a firearm as that term is defined in *Bailey*." *Bousley*, 523 U.S. at 624. The Supreme Court discussed the evidence that the government may use in refuting the actual innocence argument, yet did not once mention any requirement that petitioner himself introduce new evidence. *Id.* at 623-24. Moreover, as set out above, the Second Circuit has analyzed actual innocence claims in cases where petitioners rely, not on new evidence, but on an intervening change in the law. *Fountain*, 357 F.3d at 255-60; *Rosario*, 164 F.3d at 733-35; *DeJesus*, 161 F.3d 103-04.

Lastly, adopting the rule that an intervening change in the law is sufficient to invoke an actual innocence claim would not produce an absurd result given "the unique nature of the [p]etitioner's argument." *Petronio*, 736 F. Supp. 2d at 658.

As was the case in *Petronio*, Johnson "does not simply claim that the evidence bearing on one of the elements of the charge was insufficient," but rather argues "that, under the controlling interpretation of [the law], he could not possibly have been convicted of depraved indifference murder." *Id.* The court agrees that "the miscarriage of justice exception was designed, at least in part, for petitioners who can show this rare type of factual innocence." *Id.* at 658-59.

Accordingly, the court finds that new evidence is not required to establish a credible claim of actual innocence and invoke the miscarriage of justice exception to overcome a procedural default. Following the Supreme Court holding in *Bousley* and subsequent Second Circuit case law, including *Fountain*, *Rosario*, and *DeJesus*, the court concludes that an actual innocence claim can be premised solely on an intervening change in the law.

Finally, the claim of actual innocence is not defeated, as respondent suggests, by petitioner's position that the facts in his case support a finding of intent to harm. The court agrees with Judge Reyes that "Johnson's position is a disturbing one — that intent to harm negates his conviction." (R&R at 20.) The miscarriage of justice exception, however, does not require petitioner to show that he is innocent of all possible crimes. Rather, it is enough that petitioner can

establish that he is "actually innocent *of the crime of which he was convicted.*"  *DeJesus*, 161 F.3d at 102 (emphasis added); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("A *habeas* petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent *of the crime for which he has been convicted.*" (emphasis added)); *cf. Dretke v. Haley*, 541 U.S. 386, 393-94 (2004) (holding "that a federal court faced with allegations of actual innocence, whether of the sentence or *of the crime charged*, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default" (emphasis added)).  "While the evidence surely proved that [petitioner] was guilty of manslaughter, as discussed below, his actions – even as described by the People at trial – simply did not constitute depraved indifference murder as a matter of law, and it would be manifestly unjust for him to serve a sentence for a crime that he did not commit." *Fernandez*, 558 F. Supp. 2d at 494.  In this case, petitioner can establish that he is actually innocent of depraved indifference murder, even if he cannot show that he is actually innocent of, for example, first degree manslaughter.

Because the law on depraved indifference murder underwent significant changes prior to his conviction becoming

final, Johnson can rely on such changes to establish that he is actually innocent of the crime of depraved indifference murder, as outlined below, and thus overcome the procedural default.

    D.   *Merits of Legal Insufficiency Claim*

        *1. Applicable Depraved Indifference Murder Standard*

        Respondent objects to the finding in the R&R that "[p]etitioner is entitled to review of his claim based on the law as it was at the time his conviction became final, May 29, 2006, rather than the time of trial." (R&R at 25.) In essence, respondent advances two arguments in support of this objection. First, respondent argues that state procedural rules limit application of the new law to cases in which the legal insufficiency claim was preserved. (Obj. Mem. at 7-10, 13.) Second, respondent argues that the decision of the Appellate Division upholding petitioner's conviction, and refusing to apply new law, was reasonable. (*Id.* at 7-8, 10-13.) Petitioner replies that "it is clear that where, as here, the conviction of a depraved indifference murder was not final before the law changed, a petitioner whose claim is still pending on direct review is entitled to benefit from any substantial change in the law upon which he was convicted." (Reply to Obj. ¶ 15.) For the foregoing reasons, the court disagrees with respondent's objections and finds that petitioner is entitled to review of

his legal insufficiency claim based on the state of the law at the time his conviction became final.

Respondent argues that "the change in the law that occurred after defendant's trial is of no avail to [petitioner]" because, "[u]nder New York law, evidence is legally sufficient to establish a defendant's guilt of a charged crime if the evidence is sufficient to establish the elements of the crime as those elements were charged to the jury without exception." (Obj. Mem. at 6.)  Further, respondent argues that "the state can limit the category of cases in which relief must be granted pursuant to new rules of state law to cases pending on direct appeal in which the issue has been preserved for appellate review."  (*Id.* at 13.)  As an initial matter, the court notes that this case does not involve application of a new state law after a conviction has become final.  The Second Circuit has clearly held that, in those circumstances, "due process [does] not mandate the retroactive application of the post-2004 interpretation [of the depraved indifference murder statute] of the New York Court of Appeals on collateral review."  *Henry*, 578 F.3d at 141.

Rather, respondent argues that federal habeas review is foreclosed by relying on state procedural rules that bar application of the new state law to petitioner's case, despite the fact that the case was pending on direct appeal at the time

the new law was announced.  The court "recognize[s] the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  It is equally clear, however, that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred *unless* the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Id.* (emphasis added).  Here, the court has already determined that petitioner demonstrated that a miscarriage of justice would result if his claim is not reviewed on the merits because he is actually innocent of depraved indifference murder.  This showing allows petitioner to overcome the procedural defaults cited by respondent that would ordinarily foreclose federal habeas review.

Respondent further argues that "the evidence was legally sufficient to support the conviction, given the law in effect when the Appellate Division decided [petitioner's] appeal on October 11, 2005" because "the Appellate Division reasonably could have concluded that [the new law] had no application to

this case." (Obj. Mem. at 7-8.) Moreover, respondent argues that "[petitioner] cannot properly challenge the Appellate Division's decision in his case on the basis of" the cases decided after October 11, 2005 because "[t]o hold otherwise would yield the absurd result that a state court decision could be considered an 'unreasonable application' of a principle that was 'clearly established' by the Supreme Court, even though, at the time of the state court decision, the relevant Supreme Court decision had not yet been issued." (*Id.* at 11-12.)

Both arguments rely on the reasonableness of the state court adjudication – either the reasonableness of rejecting application of the new law, or the reasonableness of the Appellate Division decision in light of the law existing at the time. The standard of review in this case, however, is not the deferential standard set out in AEDPA, under which a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Instead, as Judge Reyes correctly noted in the R&R, "[i]f . . . the state court decision was not adjudicated on the merits, but the federal court finds that the merits of the petition should be reached (*e.g.*, after excusing procedural default for cause and prejudice or to prevent a fundamental miscarriage of justice), . . . the petitioner is entitled to *de novo* review on those claims." (R&R at 24.) *See Cone v. Bell*, 129 S. Ct. at 1784 ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' . . . Instead, the claim is reviewed *de novo*."); *Bell v. Miller*, 500 F.3d at 155 (noting that the court will review the federal claim *de novo* when the court finds the claim was not adjudicated on the merits in state court); *see also Sellan*, 261 F.3d at 309-10.

Here, the Appellate Division did not reach the merits of the legal insufficiency claim, and instead decided petitioner's case on procedural grounds. *See People v. Johnson*, 801 N.Y.S.2d at 755 (finding that petitioner's "contention that the evidence was legally insufficient to support his conviction of depraved indifference murder is not preserved for appellate review and [the Appellate Division] decline[s] to reach the issue in the exercise of our interest of justice jurisdiction").

Consequently, the issue in the instant case is not whether the state court adjudication was reasonable.  Rather, petitioner is entitled to *de novo* review of the merits of his claim.

Having undertaken a *de novo* review of the record, the parties' submissions, and the relevant case law, the court agrees with Judge Reyes that "[p]etitioner is entitled to review of his claim based on the law as it was at the time his conviction became final."  (R&R at 25.)  "With respect to challenges regarding the sufficiency of the evidence supporting a conviction for depraved indifference murder, the court must look to New York law as it existed at the time [p]etitioner's conviction became final."  *Walker v. Ercole*, 08-cv-4204, 2011 WL 843966, at *6 (E.D.N.Y. Mar. 8, 2011); *see also Fernandez*, 558 F. Supp. 2d at 498-501 (noting that "Supreme Court case law . . . supports the conclusion that [petitioner] was entitled to the benefit of the clarification in the law before his decision became final"); *Archer v. Fischer*, 05-cv-4990, 2009 WL 1011591, at *14 (E.D.N.Y. Apr. 13, 2009) ("With respect to petitioner's challenge in the instant case to the sufficiency of the evidence supporting the conviction for depraved indifference murder, this Court must look to New York law as it existed at the time petitioner's conviction became final."); *cf. Williams v. Phillips*, 307 F. App'x 489, 491 n.2 (2d Cir. 2008) (noting that "[b]ecause petitioner's conviction became final in 2002," the

law in effect at that time, as set out in *Register*, applied).

Here, petitioner was denied leave to appeal to the New York

Court of Appeals on February 28, 2006. *See People v. Johnson*, 6

N.Y.3d 814. Thus, his conviction became final ninety (90) days

later, on May 29, 2006, when his time for filing a petition for

a writ of certiorari to the Supreme Court expired.

Consequently, in assessing the sufficiency of the evidence to

support his conviction for depraved indifference murder, the

court must apply the law as it existed on May 29, 2006.

  *2. Depraved Indifference Murder Law*

   Having determined that petitioner is entitled to

benefit from the developments of the depraved indifference

murder law announced by the New York Court of Appeals before his

conviction became final, the court must determine what the state

of the law was at that time. In doing so, the court concurs

with the thorough analysis of the development of the law set out

by Judge Reyes in the R&R. (*See* R&R at 25-29.)

   Until 2003, the law on depraved indifference murder

was governed by *People v. Register*, 60 N.Y.2d 270 (1983) and

*People v. Sanchez*, 98 N.Y.2d 373 (2002). In *Register*, the New

York Court of Appeals "held that recklessness, pure and simple,

is the *mens rea* for depraved indifference murder, which is

'distinguishable from manslaughter [] not by the mental element

involved but by the objective circumstances in which the act

occurs'; these circumstances define the degree of risk created by the defendant.  As a result, 'the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct.'" *Policano v. Herbert*, 7 N.Y.3d 588, 597 (2006) (quoting *Register*, 60 N.Y.2d at 277-78).  In *Sanchez*, a divided New York Court of Appeals upheld a conviction for depraved indifference murder, reasoning that "although the gun had been fired at point-blank range, it was fired at an angle, the shooting was instantaneous and impulsive, and the jury could have concluded that 'defendant's homicidal level of mental culpability was reckless rather than intentional.'"  *People v. Feingold*, 7 N.Y.3d 288, 291 (2006) (quoting *Sanchez*, 98 N.Y.2d at 378).

"After *Register* and *Sanchez*, and beginning in 2003, a number of decisions by [the New York Court of Appeals] . . . pointed the law in a different direction."  *Id.* at 292.  The first case in the series of cases departing from *Register* and *Sanchez* was *People v. Hafeez*, 100 N.Y.2d 253 (2003).  In that case, the Court of Appeals found that when "the actions of both defendants were focused on first isolating, and then intentionally injuring, the victim . . . there exists no valid line of reasoning that could support a jury's conclusion that

defendant possessed the mental culpability required for depraved indifference murder." *Hafeez*, 100 N.Y.2d at 259.

In the next case, *People v. Gonzalez*, 1 N.Y.3d 464 (2004), "after a jury found the defendant not guilty of intentional murder but guilty of depraved indifference murder, [the New York Court of Appeals] determined that a defendant could not be convicted of depraved indifference murder where a defendant first shot the deceased in the chest from a distance of six to seven feet, then shot him in the head as he fell to the floor and shot him eight more times as he lay on the floor." *Feingold*, 7 N.Y.3d at 293 (discussing the facts in *Gonzalez*). The Court of Appeals reasoned that depraved indifference murder differed from intentional murder "in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct." *Gonzalez*, 1 N.Y.3d at 467. "[W]here . . . a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct." *Id.* Instead, depraved indifference murder is found where:

> . . . a defendant - unconcerned with the consequences – . . . fires into a crowd; drives an automobile down a crowded sidewalk at high speed; shoots a partially loaded gun at a person's chest during a game of Russian roulette; abandons a helplessly intoxicated person on a snowy highway at night; or

46

> repeatedly beats a young child over a period
> of several days.

*Id.* (citations omitted).  The Court of Appeals held that

"[d]epraved indifference murder does not mean an extremely, even

heinously, intentional killing.  Rather, it involves a killing

in which the defendant does not have a conscious objective to

cause death but instead is recklessly indifferent, depravedly

so, to whether death occurs."  *Id.* at 468.  "When defendant shot

his victim at close range," the Court of Appeals concluded, "he

was not recklessly creating a grave risk of death, but was

creating a virtual certainty of death born of an intent to

kill."  *Id.*

In *People v. Payne*, 3 N.Y.3d 266 (2004), the next case

in the series, "[t]he defendant went to the home of the deceased

and shot him in the chest with a 12-gauge 'elephant' shotgun."

*Feingold*, 7 N.Y.3d at 293 (discussing the facts in *Payne*).  The

Court of Appeals explained that it had "differentiated cases

like *Payne* (and *Gonzalez*) from homicides in which a defendant

lacking the intent to kill (but oblivious to the consequences

and with depraved indifference to human life) shoots into a

crowd or otherwise endangers innocent bystanders."  *Payne*, 3

N.Y.3d at 271.  It found that "[t]he use of a weapon can never

result in depraved indifference murder when, as here, there is a

manifest intent to kill." *Id.* The Court of Appeals further
noted:

> [I]f a defendant fatally shoots the intended
> victim once, it could be murder,
> manslaughter in the first or second degree
> or criminal negligence (or self-defense),
> but not depraved indifference murder.
> Moreover, it should be obvious that the more
> the defendant shoots (or stabs or bludgeons)
> the victim, the more clearly intentional is
> the homicide. Firing more rounds or
> inflicting more wounds does not make the act
> more depravedly *indifferent*, but more
> intentional. Absent the type of
> circumstances in, for example, *Sanchez*
> (where others were endangered), a one-on-one
> shooting or knifing (or similar killing) can
> almost never qualify as depraved
> indifference murder.

*Id.* at 272.

"Finally, in *People v. Suarez*, 6 N.Y.3d 202 (2005),
the jury acquitted defendant of intentional murder but found him
guilty of depraved indifference murder" in a case in which
"[t]he defendant had stabbed his girlfriend in the throat, the
chest and the abdomen and left her to bleed to death."
*Feingold*, 7 N.Y.3d at 293 (discussing the facts in *Sanchez*).
The Court of Appeals found that "someone who intends to cause
serious physical injury does not commit depraved indifference
murder because the intended victim dies." *Suarez*, 6 N.Y.3d at
211. It explained that "a defendant who intends to injure or
kill a particular person cannot generally be said to be
'indifferent' - depravedly or otherwise - to the fate of that

person," and it underscored the holding in *Payne* that "'a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder.'" *Id.* (quoting *Payne*, 3 N.Y.3d at 271); *see also Feingold*, 7 N.Y.3d at 294 (noting that *Suarez* "concluded that rarely can depraved indifference murder apply to the killing of a single victim").

The Court of Appeals explicitly overruled *Register* and *Sanchez* the following year, in *People v. Feingold*. 7 N.Y.3d 288. In *Feingold*, the Court of Appeals noted: "We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state." *Feingold*, 7 N.Y.3d at 294. It noted that "[b]eginning with *Hafeez*, the *Register/Sanchez* rationale was progressively weakened so that it would no longer support most depraved indifference murder convictions, particularly one-on-one shootings or stabbings." *Id.*

Although *Feingold* was decided after petitioner's conviction became final, *Hafeez*, *Gonzalez*, *Payne* and *Suarez*, all decided before May 29, 2006, "represent a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in *Register* and *Sanchez.*" *Policano*, 7 N.Y.3d at 603. These cases "incrementally 'pointed the law in a different direction,' culminating in [the Court of Appeals] explicit[ly] overruling [] *Register* and *Sanchez* in *Feingold*." *Id.* at 595.

Therefore, while petitioner does not receive the benefit of the Court of Appeals' explicit overruling of the *Register* standard in *Feingold*, the court agrees with Judge Reyes that "it is appropriate to use the interpretation as developed through *Hafeez*, *Gonzalez*, *Payne*, and *Suarez* to evaluate the legal sufficiency of Johnson's depraved indifference conviction." (R&R at 30.)

   *3. Legal Sufficiency of Petitioner's Conviction*

   Respondent objects to the finding in the R&R that "[t]he evidence at Johnson's trial, viewed even in the light most favorable to the prosecution, simply does not support a conviction of depraved indifference murder as it has been interpreted in *Hafeez* through *Suarez*." (R&R at 30.) Respondent argues that, if the court excuses the procedural default and reaches the merits of the instant case, "the evidence was legally sufficient to support the conviction even under *Suarez*" because "[t]he evidence adduced at trial showed that [petitioner] fired multiple gunshots wildly on a residential street with apartment buildings." (Obj. Mem. at 14-15.) Petitioner responds "whether [p]etitioner's intent was to kill or to cause serious injury to the victim, under no circumstance can it be said that he was 'indifferent' to the victim's fate." (Reply to Obj. ¶ 12.)

Supreme Court precedent clearly establishes that "the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson v. Virginia*, 443 U.S. 307, 315, 317-18 (1979) (internal quotations and citation omitted). When "no rational trier of fact could find guilt beyond a reasonable doubt," the judgment of conviction "cannot constitutionally stand." *Id.* at 317-18. In light of respondent's objections to the R&R, the court has undertaken a *de novo* review of the record, the parties' submissions, and the relevant case law governing legal insufficiency claims, and concludes that no reasonable trier of fact could find petitioner guilty of depraved indifference murder, and thus his conviction cannot constitutionally stand.

The facts at trial, established primarily through petitioner's written and videotaped confessions, support a finding of intentional acts, not depraved indifference murder. Johnson chased after his victim, Chandler, and shot at him numerous times. (Pet. at 7; Trial Tr. at 179; Confession Tr. at 5, 14.) Chandler was shot at least six times, and a total of nine or ten shots were fired. (Trial Tr. at 115-16, 235-37.) Petitioner explained in his confessions that he shot Chandler because he feared that if Chandler reached his family and

friends, "[petitioner] would have been dead."  (Trial Tr. at 179

("I felt that I had no choice."); Pet. at 6-7 ("[Petitioner]

believe[d] his life was in danger and had to do something before

someone found out that [petitioner] was the reason Chandler was

hit with a gun."); Confession Tr. at 5 ("I was gonna get done

in."), 14 ("And I knew I had to do something or it was gonna get

done to me.").)  As explained by the prosecutor at sentencing,

the way Johnson killed Chandler was "particularly aggregious

[sic] and particularly severe," and the facts made "abundantly

clear" that "Johnson didn't want Calvin Chandler to ever get up

from the ground again, and he fired as many shots into him at

close distance right on top of him even as he was helpless to

make sure that wouldn't happen."  (Sent. Tr. at 5-6.)  The crime

was, as described by Judge Demarest, "essentially, a cold-

blooded killing."  (*Id.* at 10.)

     The court disagrees with respondent that, under the

law as expressed by *Hafeez* through *Suarez*, the evidence at trial

was legally sufficient to support the depraved indifference

murder conviction.  The actions of petitioner, like the actions

of the defendant in *Hafeez*, "were focused on . . . intentionally

injuring[] the victim."  *See Hafeez*, 100 N.Y.2d at 259.  The

Court of Appeals explained in *Gonzalez* that where, as here,

petitioner "shot his victim at close range, petitioner was not

recklessly creating a grave risk of death, but was creating a

virtual certainty of death born of an intent to kill."
*Gonzalez*, 1 N.Y.3d at 468. Further, the evidence does not show
that petitioner fired "wildly," as respondent suggests. (Obj.
Mem. at 14-15.) Instead, petitioner "chased down" Chandler and
fired at him, hitting Chandler with at least six of nine or ten
shots. (Pet. at 7; Trial Tr. at 179; Confession Tr. at 5, 14-
15.) As the Court of Appeals explained in *Payne*, "[f]iring more
rounds or inflicting more wounds does not make the act more
depravedly *indifferent*, but more intentional." *Payne*, 3 N.Y.3d
at 272.

The Court of Appeals in *Suarez* clearly held that "[a]
defendant may be convicted of depraved indifference murder when
but a single person is endangered in only a few rare
circumstances," such as when "the defendant intends neither to
seriously injure, nor to kill, but nevertheless abandons a
helpless and vulnerable victim in circumstances where the victim
is highly likely to die," when "[the] defendant - acting with a
conscious objective not to kill but to harm - engages in torture
or a brutal, prolonged and ultimately fatal course of conduct
against a particularly vulnerable victim," or "in a few other
extraordinary cases involving conduct that endangered only one
person, where the evidence showed not just recklessness, but
depraved indifference to human life," such as when a defendant
"fired at point-blank range without knowing whether the bullet

was a 'live' or 'dummy' round." *Suarez*, 6 N.Y.3d at 212-13.

"Where comparable facts are not shown, however, a jury is

foreclosed, as a matter of law, from considering a depraved

indifference murder charge whenever death is the result of a

one-on-one confrontation." *Id.* at 213. "Moreover, the mere

presence of third persons at the scene of a killing does not

convert an intentional homicide directed at a particular victim

into depraved indifference murder unless others are *actually*

*endangered*." *Id.* at 213 n.7.

    None of the facts outlined by the Court of Appeals in

*Suarez* are present here to convert this one-on-one confrontation

between Johnson and Chandler into depraved indifference murder.

Additionally, the mere possibility that other individuals were

near the scene of the shooting does not convert this into a

depraved indifference murder. In *Gonzalez*, the evidence was

legally insufficient to support the depraved indifference murder

conviction even though another individual was present at the

scene of the shooting and the defendant "waved the gun at [him,]

warned him not to say anything and walked out the door."

*Gonzalez*, 1 N.Y.3d at 466; *see also Suarez*, 6 N.Y.3d at 213 n.7.

Here, in contrast, although the facts suggest that petitioner's

friends might have been present at the time of the shooting,

there is no evidence suggesting that the individuals that might

have been present were endangered by petitioner's actions. This

is not an instance in which a petitioner fired gunshots wildly into a crowd; rather, Johnson chased his victim and purposefully fired at the victim with the intent to kill or seriously injure him.

Because the facts show that petitioner intended to either kill or seriously injure Chandler, the evidence at trial was legally insufficient to support his conviction for depraved indifference murder. *See Suarez*, 6 N.Y.3d at 211 (noting that "someone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies"); *see also Hafeez*, 100 N.Y.2d at 259 (noting that because "the actions of both defendants were focused on first isolating, and then intentionally injuring, the victim . . . there exists no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder"). In light of *Hafeez*, *Gonzalez*, *Payne*, and *Suarez*, no rational juror could find defendant guilty of depraved indifference murder beyond a reasonable doubt. Therefore, petitioner's rights under the Due Process Clause of the Fourteenth Amendment were violated and his conviction "cannot constitutionally stand." *Jackson*, 443 U.S. at 318. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is granted on this ground.

## III. **Ineffective Assistance of Counsel Claims**

**III.** <u>**Grounds 2, 3 & 4: Ineffective Assistance of Counsel Claims**</u>

None of the parties object to the recommendations in the R&R that the court deny petitioner relief on each of his three ineffective assistance of counsel claims. (*See generally* Obj.; Obj. Mem.)  Because neither party has objected, the court "'need only satisfy itself that there is no clear error on the face of the record.'"  *Urena*, 160 F. Supp. 2d at 609-10 (quoting *Nelson*, 618 F. Supp. at 1189).

Judge Reyes first found that petitioner's ineffective assistance of trial counsel claim for failure to request a § 730 hearing is procedurally barred because the state court decided the claim on an independent and adequate state law ground.  (R&R at 13, 33-34.)  Specifically, Judge Reyes found that the state court denied petitioner relief based on the basis of two procedural rules, N.Y.C.P.L. §§ 440.10(3)(a) and (4)(b), after finding that petitioner failed to "adduce any facts on the record that would serve an adequate basis for review, despite his ability to do so before sentencing or appeal" and "failed to substantiate his claim with supporting evidence and sworn affidavits," and that these procedural rules sufficed to bar federal review of the claim.  (*Id.*)

Judge Reyes then analyzed petitioner's ineffective assistance of trial counsel claim for failure to preserve the legal insufficiency claim for appeal.  (*Id.* at 33-36.)  As an

initial matter, Judge Reyes explained that, pursuant to the Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must "prove both that the attorney's performance was deficient and that he was prejudiced by the attorney's deficient performance" in order to establish a claim for ineffective assistance of counsel. (*Id.* at 33.) The R&R noted that "Judge Demarest explained in detail her reasons for denying" petitioner's § 440.10 motion on this ground, and found that "her decision was neither contrary to, nor an unreasonable application of, the *Strickland* standard." (*Id.* at 34.) In particular, Judge Reyes concluded that "the decision not to object to a colorable claim did not render trial counsel's assistance defective," as required under the first prong of *Strickland*, because "[b]ased on the state of depraved indifference murder law at the time, the People had a colorable depraved indifference murder charge." (*Id.* at 36.)

Finally, Judge Reyes analyzed petitioner's ineffective assistance of appellate counsel claim for failure to raise the ineffective assistance of trial counsel on appeal. (*Id.* at 36-37.) The R&R noted that the same *Strickland* standard applied for review of ineffective assistance of appellate counsel claims. (*Id.* at 36.) Because appellate counsel "did, in fact, raise the issue" of the ineffectiveness of trial counsel on appeal, and because "even if she had not mentioned the issue at

all" the decision of "which claims to bring and how to argue them are ultimately strategic choices," Judge Reyes concluded that the claim is "completely meritless" and the state court's adjudication denying relief "was not contrary to, or an unreasonable application of, the standard set forth in *Strickland*." (*Id.* at 37.)

Having reviewed the record, the parties' submissions, and the relevant case law, the court finds the R&R findings denying relief to petitioner on each of the three ineffective assistance of counsel claims are not clearly erroneous. Therefore, the court fully adopts this portion of the R&R as the opinion of the court, and concludes as follows: (1) petitioner's ineffective assistance of trial counsel claim for failure to request a § 730 hearing is procedurally barred; (2) petitioner's ineffective assistance of trial counsel claim for failure to preserve the legal insufficiency claim is denied on the merits; and (3) petitioner's ineffective assistance of appellate counsel claim is denied on the merits.

/

/

/

/

/

/

## CONCLUSION

Johnson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is granted to the extent that his conviction for depraved indifference murder is vacated. The petition for a writ of habeas corpus is denied on all other grounds. The case is remanded to the state courts for further proceedings not inconsistent with this decision. The Clerk of the Court is respectfully directed to enter judgment accordingly.

Respondent is directed to serve a copy of this Order on petitioner and file a Certificate of Service on ECF by no later than July 29, 2011.

**SO ORDERED.**

Dated:     July 27, 2011
           Brooklyn, New York

                                        /s/
                              _____
                              **Kiyo A. Matsumoto**
                              United States District Court
                              Eastern District of New York